**RUTH FAMILY MEDICAL CENTER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (STEINHOUSE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 10, 1998.

Decided Sept. 24, 1998.

Marshall A. Haislup, III, Philadelphia, for petitioner.

Thomas Bruno, Philadelphia, for respondent.

Before FRIEDMAN and KELLEY, JJ., and JIULIANTE, Senior Judge.

FRIEDMAN, Judge.

Ruth Family Medical Center (Employer) appeals from an order of the Workers' Compensation Appeal Board (WCAB) affirming the decision of a workers' compensation judge (WCJ) to grant the claim petition of Natawadee Steinhouse (Claimant) and to suspend Claimant's compensation benefits. We affirm.

Claimant had been employed as a family physician with Employer since 1987 when, on October 5, 1988, Claimant suffered injuries to her neck and back in a motor vehicle accident. (WCJ's Findings of Fact, Nos. 1, 3, 4.) Claimant filed a claim petition alleging that, because she sustained these injuries in the course of her employment, Employer must provide workers' compensation benefits. Employer filed a timely answer denying the material allegations in the claim petition, and hearings were held before a WCJ. Based on the evidence adduced at the hearings, the WCJ made the following findings of fact:[1]

3. The parties stipulated to the following:

    a. At the time of this accident,...[Claimant earned] an average weekly wage of $1,492.25.

    b. Subsequently, for a period of forty-nine (49) weeks from April 1989 to March, 1990[sic] Claimant's earnings were diminished in excess of $700.00 per week, resulting in a partial disability weekly wage rate of $419.00.

. . .

5. Claimant testified that as part of her regular duties, she made early morning rounds at St. Agnes Medical Center treating patients of [Employer], and then saw patients [at Employer's] office from approximately 8:00 a.m. to 2:00 p.m.

6. Claimant testified that on October 5, 1988, she had just completed her rounds at the St. Agnes Medical Center and was enroute [sic] to [Employer] for her regular office hours, when she was injured in a motor vehicle accident...approximately one block from the office.

7. Claimant testified that on impact, she hit her head and both shoulders on the steering wheel and bruised her knee.

---

1. The WCJ issued amended findings of fact to correct errors made in the initial findings of fact, and we incorporate those amendments with the original findings of fact. (*See* O.R., WCJ's Amended Decision.)

8. Claimant immediately reported her injury to the Employer and sought treatment at the emergency room of St. Agnes Medical Center.

9. Claimant continued working her regular duties after October 5, 1988 and received physical therapy at [Employer] on a daily basis.

10. Claimant testified that she experienced no significant improvement in her symptoms and by April, 1989, her work hours were reduced and she was unable to maintain a complete patient load, resulting in reduced wages.

11. Claimant presented testimony from Seymour Borislow, a certified public accountant, who testified that Claimant's pay and income tax records show that she received income in 1988 in excess of $77,-000.00, but her income in 1989 was reduced to approximately $12,000.00.

12. Claimant presented medical evidence by way of reports from Drs. Louis Steinberg, James Bonner and Max Karpin.

. . .

22. None of Claimant's treating physicians opined that Claimant's reduced earnings during the period from April, 1989 to March, 1990 were causally related to the October 5, 1988 accident.

23. Defendant presented no factual or medical evidence.

24. The [WCJ] accepts the testimony of Claimant and her medical evidence as credible to the extent that Claimant suffered injuries to her head, neck, back and upper extremities as a result of the October 5, 1988, motor vehicle accident and received reasonable and necessary medical services related to the injuries.

25. The [WCJ] rejects the testimony of Claimant as not credible regarding any disability related to the accident from April, 1989 to March, 1990 as there is no supporting medical evidence that she was unable to continue working full duties without wage loss during the time period.

. . .

27. The [WCJ] finds that Claimant was an employee of [Employer] as she performed services for [Employer] for a valuable consideration.

28. The [WCJ] finds that Claimant had a fixed place of work at St. Agnes Medical Center and at the office of [Employer] and was thus a stationary employee.

29. The Judge finds that Claimant was traveling from one [E]mployer site to another and thus in the course of her employment when she was injured on October 5, 1988.

. . .

33. [Employer] presented a reasonable contest as to Claimant's alleged disability and as to the employer-employee and course of employment issues.

(WCJ's Findings of Fact, Nos. 3, 5–12, 22–25, 27–29, 33.) The WCJ found that Claimant's October 5, 1988 injury occurred during the course and scope of her employment; however, the WCJ determined that Claimant failed to prove that her wage loss from April 1989 to March 1990 was a result of the October 5, 1988 injury. Accordingly, the WCJ ordered: (1) Employer to pay for all medical expenses incurred by Claimant; (2) Employer to remain responsible for all reasonable and necessary medical expenses related to the work-related injury; (3) a suspension of Claimant's compensation benefits as of October 5, 1988, the date of the accident; and (4) Employer to pay Claimant's litigation costs. Claimant and Employer cross-appealed to the WCAB, which affirmed.[2]

2. On appeal to the WCAB, Claimant argued that the WCJ erred by: (1) finding that Claimant failed to prove that she was disabled from April 1989 to March 1990; and (2) determining that Employer's contest was reasonable. The WCAB rejected both of Claimant's contentions, and Claimant does not challenge the WCAB's determinations on appeal to this court.

In its cross-appeal to the WCAB, Employer argued that the WCJ erred by: (1) finding that Claimant was injured in the course and scope of her employment; (2) accepting Claimant's medical reports into evidence; (3) awarding a suspension of Claimant's compensation benefits as of October 5, 1988; and (4) ordering Employer to pay for Claimant's medical expenses and costs of

Employer now appeals to this court,[3] first arguing that the WCJ erred in concluding that Claimant was within the course of her employment when she sustained injuries in the October 5, 1988 motor vehicle accident. We disagree.

■ Section 301(c)(1) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1) (emphasis added), states in pertinent part:

> (1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe ... arising *in the course of his employment ....* The term "injury arising in the course of his employment," as used in this article ... shall include all ... injuries sustained while the employe is *actually engaged in the furtherance of the business or affairs of the employer,* whether upon the employer's premises or elsewhere ....

Whether an employee injured away from the employer's premises sustained the injury in the course of employment is a question of law based on the WCJ's findings of fact and is fully reviewable by this court. *Lenzner Coach Lines v. Workmen's Compensation Appeal Board (Nymick, Sr.),* 158 Pa.Cmwlth. 582, 632 A.2d 947 (1993); *Empire Kosher*

*Poultry, Inc. v. Workmen's Compensation Appeal Board (Zafran),* 154 Pa.Cmwlth. 276, 623 A.2d 887 (1993), *appeal denied,* 536 Pa. 648, 639 A.2d 34 (1994). The central issue in making this determination is whether the employee was injured while "actually engaged in the furtherance of the business or affairs of the employer." Section 301(c) of the Act, 77 P.S. § 411(1). Because Claimant here was a "stationary employee" with a "fixed place of work at St. Agnes Medical Center and at [Employer's offices]," (WCJ's Findings of Fact, No. 28), we must decide whether Claimant's travel from St. Agnes Medical Center to Employer's offices on October 5, 1998 was for purely personal reasons or whether it was related to the duties that she was to perform for Employer.[4] *See Denny's Restaurant v. Workmen's Compensation Appeal Board (Stanton),* 142 Pa. Cmwlth. 531, 597 A.2d 1241, 1243 (1991).

Here, Employer acknowledges that Claimant's trip from St. Agnes Medical Center to Employer's office was not purely personal in nature and was, in fact, work-related. However, relying on *Action, Inc. v. Workmen's Compensation Appeal Board (Talerico),* 116 Pa.Cmwlth. 81, 540 A.2d 1377 (1988), *aff'd,* 523 Pa. 419, 567 A.2d 1040 (1990), Employer argues that because Claimant's regular job duties required her attendance at both St.

litigation. The WCAB determined that the WCJ's findings were supported by substantial record evidence and that the WCJ did not commit legal error; thus, the WCAB affirmed the WCJ's order granting Claimant's claim petition and suspending Claimant's benefits as of October 5, 1988.

3. Our scope of review in workers' compensation decisions is limited to determining whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Berks County Home v. Workmen's Compensation Appeal Board (Schnable),* 145 Pa.Cmwlth. 582, 604 A.2d 767 (1992). The WCJ, in the exercise of discretion, is free to evaluate the evidence offered and may accept or reject the testimony of any witness in whole or in part. *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano),* 134 Pa. Cmwlth. 164, 578 A.2d 83 (1990); *Lehman v. Workmen's Compensation Appeal Board (Temple University Hospital),* 64 Pa.Cmwlth. 381, 439 A.2d 1362 (1982). If the evidence is such as a reasonable mind might accept as adequate to support a conclusion, the findings of the WCJ

cannot be disturbed by this court on appeal. *Lehman.*

4. "Course of employment" cases have been analyzed in two ways, depending on whether the employee is categorized as a "traveling employee" or a "stationary employee." *Denny's Restaurant v. Workmen's Compensation Appeal Board (Stanton),* 142 Pa.Cmwlth. 531, 597 A.2d 1241, 1243 (1991). In cases involving "traveling employees," the "course of employment" is broader, and there is a presumption that the employee is engaged in the furtherance of the employer's business. *Id.* In cases concerning "stationary employees," the interpretation of "course of employment" is narrower; there must be evidence that the trip away from the employer's premises was business related. *Id.* For a "stationary employee," injuries which occur during trips away from the employer's premises, if such trips are personal in nature and have no relation to the business of the employer, will not be held to have occurred in the "course of employment" and, thus, are not compensable under the Act. *Id.; see Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Stevens),* 70 Pa.Cmwlth. 163, 452 A.2d 902 (1982).

Agnes Medical Center and Employer's office, Claimant was merely commuting to work when the accident occurred; thus, under the "going-and-coming" rule, Claimant is not entitled to an award of compensation benefits.[5] We cannot agree.

The facts of *Action* are readily distinguishable from those presented here. In *Action*, we denied compensation benefits to a claimant whose decedent suffered fatal injuries while returning *home* after attending a meeting required by the decedent's employer. We held that the decedent's attendance at the meetings was a normal function of his employment and, thus, did not constitute a "special mission" within the meaning of the "going-and-coming" rule; therefore, once the decedent left the meeting to return home, he had no further obligation to the employer.[6]

■ Here, Claimant testified credibly that, as part of her duties for Employer, her daily schedule required that she first travel to St. Agnes Medical Center to see patients and then proceed to Employer's office to maintain office hours.[7] Unlike the claimant in *Action*, who was injured while traveling home following the performance of his work duties, Claimant here was not traveling home from work at the time of the accident. Rather, Claimant was traveling *between* two fixed places of employment for Employer, as required by her job duties.[8] (WCJ's Findings of Fact, Nos. 28–29.) Because substantial record evidence exists to support these findings of the WCJ, we conclude that the WCAB did not err in affirming the WCJ's determination that Claimant was acting in the course of Employer's business at the time she sustained the injuries in the motor vehicle accident. *See Denny's Restaurant.*[9]

5. Generally, injuries received by an employee while traveling to and from work are not compensable. *Peer v. Workmen's Compensation Appeal Board (B & W Construction)*, 94 Pa.Cmwlth. 540, 503 A.2d 1096 (1986). This statement of the law is commonly known as the "going-and-coming" rule. In *Peer*, we explained that:

> [t]his rule is grounded on the recognition that in the usual case an employee travelling to or from work *is neither on the premises of his* employer, nor engaged in the furtherance of his employer's affairs, as is required by Section 301(c) of the Act.

*Id.* at 1098. In summarizing the applicability of the "going-and-coming" rule we have stated,

> the "going-and-coming" rule [applies] to claims that arise while an employee is traveling to or coming from work. An employee's injury sustained at those times will not be considered to have occurred in the course of his employment, unless: "(1) the employment contract included transportation to and from work; (2) the claimant has no fixed place of work; (3) the claimant is on special assignment for the employer; or (4) special circumstances are such that the claimant was furthering the business of the employer."

*Denny's Restaurant*, 597 A.2d at 1243 (citations omitted) (quoting *Jones v. Workmen's Compensation Appeal Board (Rehabilitation Coordinators, Inc.)*, 88 Pa.Cmwlth. 426, 489 A.2d 1006, 1007–08 (1985)).

6. In *Action*, we explained this principle as follows:

> We are here concerned with whether this meeting was part of the regular duties of Claimant's employment. If it was, then his trip home was indistinguishable from the return trip of any other working day and an

> injury in the course thereof would *not* be compensable.

*Action*, 540 A.2d at 1379. *Compare City of Monessen School District v. Workmen's Compensation Appeal Board (Hays)*, 155 Pa.Cmwlth. 56, 624 A.2d 734 (1993) (holding that an employee who did *not* normally attend certain meetings, but was requested to be present at a particular function because of an emergency situation, was acting within the course of employment when injured while returning home from the meeting).

7. When questioned about her daily routine, the following exchange occurred between the WCJ and Claimant:

> [WCJ]: ...How often did you go to St. Agnes for rounds? Is that every day?
> [Claimant]: If I had patients going there.
> [WCJ]: That was part of your duties as an employee of [Employer]? Is that what you're testifying?
> [Claimant]: That's correct.

(R.R. at 49a–50a.)

8. We note that here, if the motor vehicle accident would have occurred during the commute from Claimant's home to St. Agnes Medical Center, or during the return trip from Employer's office to Claimant's home, any injury sustained by Claimant then would have been covered by the "going-and-coming" rule and would not have been compensable. *See Denny's Restaurant.*

9. In *Denny's Restaurant*, we determined that a claimant with "at least two fixed places of employment," injured while traveling from one of the locations of employer to another, was entitled to compensation benefits as the injuries were sustained in the "course of employment." *Id.* at 1243.

Employer next argues that the WCJ erred in accepting Claimant's medical reports into evidence because Claimant's claim was for a period in excess of fifty-two weeks. Specifically, Employer asserts that because the medical treatment for which Claimant sought reimbursement occurred over a period of five years, Claimant's reports were inadmissible. Again, we must disagree.

■ Section 422 of the Act, 77 P.S. § 835 (emphasis added), states, in pertinent part:

Where any claim for compensation at issue before a [WCJ] involves fifty-two weeks or less of *disability,* either the employe or the employer may submit a certificate by any health care provider as to the history, examination, treatment, diagnosis, cause of the condition and extent of *disability,* if any,...and such statements shall be admissible as evidence of medical and surgical or other matters therein stated and findings of fact may be based upon such certificates or such reports.

Thus, where a claim for compensation involves a *disability* of fifty-two (52) weeks or less, medical reports are admissible without the need for sworn testimony.[10]

■ The critical term in section 422 of the Act is "disability." For workers' compensation purposes, "disability" is synonymous with "loss of earning power." *Weis Markets, Inc. v. Workmen's Compensation Appeal Board (Barbuto),* 132 Pa.Cmwlth. 345, 572 A.2d 1295 (1989). Here, Claimant sought compensation benefits for a loss in earning power from April of 1989 to March of 1990, a period of forty-nine (49) weeks; thus, Claimant's claim meets the time limitations imposed by section 422 of the Act and the WCJ properly admitted the reports.

■ Employer also relies on *Weis Markets* to argue that Dr. Steinberg is not a "qualified physician" for purposes of section 422 of the Act, making his reports inadmissible under that section. In *Weis Markets,* we held that a chiropractor was not a "qualified physician" under the Act; therefore, unsworn chiropractic certificates were inadmissible to support the payment of medical expenses by an employer for an employee's work-related injuries. However, the record here reveals that Dr. Steinberg is a Doctor of Podiatric Medicine, fully licensed to perform surgical treatment and prescribe and administer medication;[11] therefore, he is a "qualified physician" for purposes of section 422 of the Act,[12] and, thus, the WCJ properly admitted Dr. Steinberg's reports.[13]

Finally, Employer argues that the WCJ erred in granting a suspension of compensa-

10. The purpose of section 422 of the Act, 77 P.S. § 835, is to promote efficiency in the administration of short-term benefit claims. The use of unsworn health care provider certificates saves both the provider's time and the claimant's expense on costly discovery measures. In 1993, the legislature increased the time period to permit the admission of medical reports from twenty-five to fifty-two weeks of disability. Although Claimant's injury occurred before the effective date of this amendment, the legislation concerns purely procedural matters and, thus, it is applicable not only to litigation commenced after its effective date, but also to litigation existing at the time it became effective. *See Galant v. Department of Environmental Resources,* 534 Pa. 17, 626 A.2d 496 (1993); *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board,* 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973).

11. Under the Statutory Construction Act, 1 Pa. C.S. § 1991 (emphasis added), "physician" is defined as "an individual licensed under the laws of this Commonwealth to engage in the practice of medicine and *surgery*...." Section 2(a) of the Podiatry Practice Act, Act of March 2, 1956, P.L. (1955) 1206, *as amended,* 63 P.S. § 42.2(a) (emphasis added), defines "Podiatric Medicine" as

"the diagnosis and treatment including mechanical and *surgical treatment* of ailments of the foot, and those anatomical structures of the leg governing the functions of the foot and the administration . and prescription of drugs incidental thereto." *See also* 49 Pa.Code §§ 29.31(f), 29.41 (stating that a podiatrist may both perform surgical procedures and administer and prescribe therapeutic drugs).

12. The 1996 amendments to section 422 of the Act, 77 P.S. § 835, inserted "health care provider" for "qualified physician;" however, this amendment has no effect on our result.

13. Employer further asserts that even if Claimant's medical reports were properly admitted, there is not substantial record evidence to support the WCJ's award of medical expenses. A review of the record reveals substantial evidence to support finding of fact number 24 which indicates a causal connection between Claimant's injuries and the motor vehicle accident, and, thus, this court will not disturb that finding on appeal.

tion benefits as of October 5, 1988, the date of the accident, because Claimant failed to establish a disability as a result of the work-related injury. Again, we disagree.

 It is well-settled that a suspension of benefits is the appropriate remedy where a work-related injury exists but does not manifest itself in any disability or loss of earning power. *Hawkins v. Workmen's Compensation Appeal Board (Medical College of Pennsylvania)*, 138 Pa.Cmwlth. 180, 587 A.2d 387 (1991). In *Shaffer v. Workmen's Compensation Appeal Board (Hollenback Township)*, 153 Pa.Cmwlth. 430, 621 A.2d 1125 (1993), we ordered the payment of medical expenses, but held that a suspension of compensation benefits was proper because there was no evidence that the claimant could not perform his pre-injury job or engage in other gainful employment. We stated,

> [t]he purpose of [workers'] compensation is to provide benefits to employees who suffer work-related injuries resulting in a loss of earnings. If an employee does not incur an immediate wage loss for an observable physical disability, the protections granted by the Act can only be achieved by issuing a suspension order, which allows the employee up to 500 weeks in which to monitor the course of his disability.

*Shaffer*, 621 A.2d at 1129 (quoting *United States Steel Corp. v. Workmen's Compensation Appeal Board*, 62 Pa.Cmwlth. 502, 437 A.2d 92, 94 (1981)); *see Hawkins*.

 Like the scenario presented in *Shaffer*, Claimant here has suffered a work-related injury entitling her to the payment of medical expenses; however, Claimant was unable to establish a connection between the injury and any loss of earnings so as to permit an award of wage loss benefits. Under these circumstances, the WCJ properly suspended Claimant's benefits as of October 5, 1988. *See Hawkins*.

Accordingly, for the foregoing reasons, we affirm.

### ORDER

AND NOW, this 24th day of September, 1998, the order of the Workers' Compensa-

tion Appeal Board, at No. A96–0758, dated December 12, 1997, is hereby affirmed.