**WESTINGHOUSE ELECTRIC CORPORATION/CBS,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (SIMON),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 14, 2003.

Decided April 29, 2003.

Joseph A. Fricker, Jr., Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Westinghouse Electric Corporation/CBS (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ), granting Dena Simon's (Claimant) claim petition pursuant to the provisions of the Pennsylvania Workers' Compensation Act (Act).[1] We affirm.

Claimant was working for Employer as a pipe-fitter on March 20, 1998. While lifting jugs of acid weighing between thirty-five and fifty pounds, Claimant testified that she felt a sharp pain in her left leg and buttocks. She claimed she was unable to work due to her injury from March 20, 1998, through June 22, 1998. She explained that she returned to work with Employer on June 22, 1998, even though she still had some pain, because she needed the money.

Claimant was first treated by Dr. James W. Sillaman, who referred her to Dr. Rodger D. Searfoss, an orthopedist. Dr. Searfoss determined that Claimant was unable to return to work due to her injury and referred her to Dr. Matthew R. Quigley, a neurosurgeon. Dr. Quigley prescribed physical therapy for Claimant. Claimant complained to her family doctor, Dr. Donald Jakubek, that she was not responding to any of the treatments prescribed, so he then referred her to Dr. Arthur T. Androkites.

At the hearing before the WCJ, Claimant submitted the report of Dr. Androkites, along with the reports of the above-mentioned doctors, in support of her claim. Dr. Androkites first examined Claimant on September 22, 1998, and opined that Claimant had suffered a mild chronic left L3–4 radiculopathy. He took circumferential measurements and determined that Claimant had a mild left thigh atrophy. He concluded that she was most likely now suffering from a low grade lumbar compressive radiculopathy.

In defense of the claim, Employer offered the report and deposition testimony of Dr. Jack D. Smith. Dr. Smith testified that he examined Claimant on October 26, 1998, and noted that she had a mild chronic L3–4 radiculopathy and mild chronic disc herniation at the L3–4 level on the left side. He opined that Claimant suffered from degenerative disc disease and stated that he believed her herniation was caused by a combination of traumatic and degenerative factors.

He specifically stated that Claimant's work injury was caused by an aggravation of a preexisting condition and agreed that she had a disability during the time she was absent from work. (R.R. at 370a). Dr. Smith stated that all his opinions were based on his assumption that a work injury did occur. He also admitted that Claimant's herniation could have occurred as a direct result of her work injury.

Dr. Smith opined that Claimant's injury had subsided. However, he admitted that he did not take any measurements to determine if she had left thigh atrophy. He also agreed that Claimant's MRI had shown a herniation and that he had not re-tested her to determine if the herniation was still present.

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

In defense of the claim, Employer also presented a surveillance tape of Claimant's activities on July 13, 1998. Michael Phillips testified that he followed Claimant for ten and one-half hours and took five minutes of videotape on July 13, 1998. The videotape showed Claimant exiting a drug store and walking through a park where she went on two amusement park rides.[2]

The WCJ determined that Claimant was a credible witness and that her history of her injury was consistent to that of Dr. Androkites' findings. The WCJ found that Claimant was entitled to workers' compensation benefits of $561.00 per week for the period of March 20, 1998, through June 22, 1998.

The WCJ further determined that Employer presented an unreasonable contest of the claim. He noted that Employer offered no medical evidence disputing Claimant's disability or injury. He also noted that even if Claimant's injury was considered an aggravation of an existing injury, it would still be compensable under the Act. The WCJ also questioned why Employer had hired a private investigator to videotape Claimant's activities after she had already returned to work on a full-time basis. The WCJ found that nothing in the videotape contradicted Claimant's allegations of injury.

Employer appealed to the Board, raising twelve allegations of error. The Board found that two of the allegations had merit. The Board determined that the WCJ had failed to give Employer credit for sickness and accident payments it had made to Claimant. The Board amended the order of the WCJ to reflect a credit for those payments. The Board also found that the WCJ had failed to make a determination as to whether Claimant was fully recovered from her work injury as of her return to work on June 22, 1998. The Board remanded the case to the WCJ for a determination as to whether Claimant's benefits should be suspended or terminated as a result of her return to work.

Upon remand, the WCJ determined that Claimant's workers' compensation benefits should be deemed suspended.[3] He based this decision on his belief that Claimant had credibly testified that she had not fully recovered, but only returned to work due to monetary concerns. He also found the opinion of Dr. Androkites as credible and noted that the doctor had not found Claimant to have fully recovered.

Employer then appealed this decision to the Board. Once again Employer raised multiple issues. The issues essentially revolved around the allegation that Claimant's benefits should have been terminated, not suspended. All of Employer's allegations were rejected by the Board.

Employer now appeals to this Court.[4] Seven allegations of error have been raised. They are as follows: (1) whether

---

2. Surveillance was also attempted on July 25, 1998. However the private investigator was unable to locate Claimant.

3. The parties agreed that further testimony was not necessary.

4. Our scope of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are sup- ported by substantial evidence. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle)*, 703 A.2d 558 (Pa.Cmwlth. 1997). We also acknowledge our Supreme Court's recent decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appel-

Claimant failed to offer substantial, competent, evidence in support of her claim petition; (2) whether the WCJ erred in finding that the testimony of Dr. Smith supported Claimant's burden of proof; (3) whether the testimony of Dr. Androkites supported the finding that Claimant continued to be disabled after June 22, 1998; (4) whether the WCJ erred in determining that Dr. Smith's testimony did not support a termination petition; (5) whether the WCJ erred in determining that Employer did not present a reasonable contest; (6) whether the WCJ rendered a reasoned decision; and (7) whether Claimant is entitled to an award of medical benefits, lost wages and a bill of costs. Additionally, Claimant has filed a motion for assessment of counsel's fees. Claimant alleges that Employer has filed a frivolous appeal and requests an award of counsel's fees for an unreasonable contest pursuant to Pa. R.A.P. 2744. Claimant requests payment of $175.00 per hour, for a total of three hours, spent in preparation of this appeal.

■ Employer's first allegation is that the WCJ erroneously admitted medical office notes and reports into evidence. Employer alleges that under Section 422(c), of the Act, 77 P.S. § 835, reports can only be submitted as evidence if a claim involves fifty-two weeks or less of disability and, even though Claimant only alleges disability for a three-month period, her disability should be deemed as encompassing more that fifty-two weeks because Claimant is not stipulating to a termination of her disability payments. In essence, Employer is alleging that any time a claim involves a possible suspension of benefits, as opposed to a termination of benefits, the claim involves an "unlimited potential lia-

bility," and should thus be deemed to be in excess of the fifty-two week period. (Employer's brief at 11).

Section 442(c) of the Act provides in pertinent part:

Where any claim for compensation at issue before a workers' compensation judge involves fifty-two weeks or less of disability, either the employe or the employer may submit a certificate by any health care provider as to the history, examination, treatment, diagnosis, cause of the condition and extent of disability, if any, and sworn reports by other witnesses as to any other facts and such statements shall be admissible as evidence of medical and surgical or other matters therein stated and findings of fact may be based upon such certificates or such reports. Where any claim for compensation at issue before a workers' compensation judge exceeds fifty-two weeks of disability, a medical report shall be admissible as evidence unless the party that the report is offered against objects to its admission.

In support of the allegation that Section 422(c) should not apply, Employer cites to *Weaver v. Workers' Compensation Appeal Board (State of the Art, Inc.)*, 808 A.2d 604 (Pa.Cmwlth.2002). *Weaver* was a case where an employer sought to terminate benefits of a claimant who had already received over one hundred weeks of disability benefits. Not surprisingly, we concluded that under Section 422(c), the case could not be submitted on medical reports alone. However, in *Weaver* we cited favorably to *Ruth Family Medical Center v. Workers' Compensation Appeal Board (Steinhouse)*, 718 A.2d 397 (Pa.Cmwlth.

late consideration in every case in which such question is properly brought before the

court." *Leon E. Wintermyer, Inc.*, 571 Pa. at 206, 812 A.2d at 487.

1998), and restated that in short-term benefit cases, a claimant could rely solely on medical reports.

*Ruth* involved a claim for benefits and a suspension of those benefits. The employer argued to this Court that medical reports should not have been submitted into evidence because the claimant's claim was for a period exceeding fifty-two weeks. The claimant had sought compensation benefits for a period a forty-nine weeks, but sought medical treatment reimbursement for a period of over five years. The employer alleged that as medical reimbursement was requested for a period of over five years, this should take the action out of the purview of Section 422(c) of the Act. We disagreed. We determined that "[f]or workers' compensation purposes, 'disability' is synonymous with 'loss of earning power.'" *Ruth*, 718 A.2d at 402.

In *Montgomery Tank Lines v. Workers' Compensation Appeal Board (Humphries)*, 792 A.2d 6 (Pa.Cmwlth.2002), the claimant was seeking medical treatment and medication for a period extending beyond a fifty-two week period, but not wages. We once again cited to *Ruth* favorably and determined that as the claimant was not seeking compensation benefits for "loss of earning power" in excess of fifty-two weeks, she was not seeking compensation for a "disability" in excess of fifty-two weeks. *Montgomery Tank Lines*, 792 A.2d at 11. As such, we determined that it was not error for the WCJ to admit medical reports over the employer's hearsay objection.

Based on the above cases, we believe that Employer's allegation as to the appli-cability of Section 422(c) in this action is without merit.[5]

Employer also alleges that Claimant's medical documents and reports should not have been admitted under Section 422(c), as Claimant did not have them properly sworn or certified. However, Employer briefs this issue while omitting the fact that the Board refused to hear this argument as it had not been raised before the WCJ. (R.R. at 43a). Indeed, counsel did not object to any of the medical evidence when it was first admitted. It was only later, when Employer realized that Claimant would not stipulate to a termination of benefits, that an objection to the medical evidence was raised. Employer's objection to the medical evidence was based on the argument that the claim was in excess of fifty-two weeks and, as such, could not be submitted under Section 422(c). Employer did not raise any claim that the medical evidence was not properly sworn or certified.

As the issue of certification or sworn testimony was never properly raised before the WCJ, it has not been properly preserved on appeal to this Court. *See* Pa. R.A.P. 1551.

 Employer's second allegation is that even if all the medical evidence was properly admitted into evidence, Claimant still did not produce sufficient, competent evidence to support her burden of proof. Employer alleges that the notes and reports of Claimant's doctors did not establish that she had suffered a work-related injury and that the WCJ also wrongly concluded that the evidence presented by Employer's witness, Dr. Smith, actually supported Claimant's claim.

---

5. We also believe that it is disingenuous for Employer to brief this issue and cite to case law on this issue without once mentioning *Ruth*. Not only is *Ruth* on point, it is the case cited to by the WCJ in rejecting Employer's argument. (R.R. at 200a–204a).

Employer's claims in this regard are without merit. The WCJ found that Claimant had credibly testified regarding the occurrence of her work-related injury and her resulting medical problems. Claimant's testimony was that she suffered pain in her left leg and buttocks while lifting a jug of acid weighing between thirty-five and fifty pounds. Dr. Andokites' report found left thigh atrophy and mild tenderness over the left sacroiliac region. Through testing he found that Claimant had suffered a mild chronic left L3–4 radiculopathy and was currently suffering from a lumbar compressive radiculopathy.

Dr. Searfoss determined that Claimant was unable to return to work as of April 6, 1998. (R.R. at 269a). Employer claims that this was not competent evidence because the doctor did not specifically state that she could not work due to a work-related injury. However, if one chooses to look at Dr. Searfoss's medical report form in its entirety, the history related establishes Claimant's allegation of injury due to lifting at work and the resulting pain therefrom.

Employer further alleges that its witness, Dr. Smith, did not acknowledge Claimant's injury, as determined by the WCJ. We believe that Employer is also incorrect in this regard. Dr. Smith admitted that Claimant's herniation could have occurred as a direct result of her work-related injury. He further stated that he assumed that a work-related injury had occurred. He actually determined that Claimant's stated work injury was caused by an aggravation of a preexisting condition.

Based on the above facts, we conclude that Employer's second allegation of error to be without merit.

■ Employer's third allegation of error is that the WCJ erred in determining

that Claimant's work-related injury had continued and in finding that her benefits should be suspended, not terminated. In support of this allegation, Employer first reargues two of the issues already discussed above, i.e., that under Section 422(c), the medical evidence should not have been allowed and that the medical evidence was insufficient to support the claim of injury. We have already determined these claims are without merit and will not readdress them.

Employer does states one issue that was not previously addressed above and that is whether Claimant presented sufficient evidence that her injury continued after she returned to work full-time. Claimant testified that the pain from her injury continued after she returned to work full-time, but that she needed the money, so she was trying to deal with the pain. The WCJ found Claimant credible. Dr. Androkites first treated Claimant on September 22, 1998. This was three months after she had returned to work full-time. Dr. Androkites found that, at that time, Claimant was still suffering from a lumbar compressive radiculopathy and also had left thigh atrophy.

Obviously, Claimant presented sufficient evidence regarding the continuation of her injury. Thus, the WCJ did not err in determining that Claimant's injury continued after her return to work.

■ Employer's fourth allegation of error is that the WCJ erred in failing to find that the deposition testimony of Dr. Smith supported a termination of Claimant's benefits. Dr. Smith testified that he did not measure Claimant's leg so he did not know if she had left leg atrophy. He further testified that he did not know for sure if her herniation was still present. However, he thought she was fully recovered.

First of all, the WCJ found Claimant and Dr. Androkites credible. The function of this Court is not to reweigh the evidence or review the credibility of the witnesses. It is to determine whether the findings of the WCJ have adequate support in the record. The WCJ is free to accept, or reject, the testimony of any medical witness, in whole or in part. *Hills Department Store No. 59 v. Workmen's Compensation Appeal Board (McMullen)*, 166 Pa.Cmwlth. 354, 646 A.2d 1272 (Pa. Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 587, 655 A.2d 518 (1995). As we have already determined that the findings of the WCJ have adequate support in the record, we will not disturb them.

Secondly, Employer did not present any medical evidence that Claimant had recovered. Dr. Smith's testimony was not substantial. Substantial evidence is any relevant evidence a reasonable person might use to form the basis of a conclusion. *Locher v. Workers' Compensation Appeal Board (City of Johnstown)*, 782 A.2d 35 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 568 Pa. 709, 796 A.2d 987 (2002). Dr. Smith testified that even though Claimant told him she was still experiencing pain and the records he received established a herniation, he did not undertake any new tests. He testified that he did not know for sure if her herniation has dissipated. He just stated his opinion that he thought she had recovered. Based on the above facts, Employer's fourth claim of error is without merit.

■■■ Employer's fifth allegation of error is that the WCJ erred in finding that Employer engaged in an unreasonable contest. Whether an Employer's contest of liability is reasonable is a question of law reviewable by this Court. *Elite Car-*

*pentry Contractors v. Workmen's Compensation Appeal Board (Dempsey)*, 161 Pa. Cmwlth. 89, 636 A.2d 250 (Pa.Cmwlth. 1993). "This court has often stated that the reasonableness of an employer's contest depends upon whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant." *Elite Carpentry Contractors*, 636 A.2d at 252. It is an employer's burden to establish that there was a reasonable basis for contesting liability. *Majesky v. Workmen's Compensation Appeal Board (Transit America, Inc.)*, 141 Pa.Cmwlth.398, 595 A.2d 761 (Pa.Cmwlth.1991), *petition for allowance of appeal denied*, 529 Pa. 653, 602 A.2d 862 (1991).

In defense of the claim, Employer presented the evidence of Dr. Smith. Dr. Smith did not dispute that Claimant suffered a work-related injury. He stated that he believed she was fully recovered, but supplied no factual foundation for that claim. Indeed, he agreed that Claimant's test results established a herniation, but did not do any further testing to determine if the herniation was still present.

The only other evidence presented by Employer was a surveillance videotape of Claimant. The WCJ expressed perplexion as to why Employer was following Claimant around with a camera a month after she had returned to work full-time. As such, the WCJ determined that Claimant's actions on the videotape showed nothing which contradicted her claims of injury.

We agree with the WCJ that Employer did not offer any evidence in dispute of Claimant's work-related injury. Thus, we do not believe that the WCJ erred in determining that Employer failed to present a reasonable contest.

Employer's sixth allegation of error is that the WCJ failed to render a reasoned

decision pursuant to Section 422(a), of the Act, 77 P.S. § 834. This allegation by Employer is nothing more than an thinly veiled attempt to challenge the credibility determinations of the WCJ and to reargue the same allegations which were raised, and determined, in other areas of this opinion, i.e., Employer alleges Claimant did not present sufficient evidence regarding her injury or the continuation of said injury, Dr. Searfoss did not specifically state Claimant's injury was work-related, and Dr. Smith did not present contradictory evidence. Strangely enough, Employer alleges that the WCJ erred in failing to give Employer credit for sickness and accident benefits paid to Claimant. This allegation is untrue. This case was specifically remanded to the WCJ by the Board for a determination as to that credit and the WCJ did award Employer said credit. (R.R. at 80a).

Employer's seventh allegation of error is that Claimant is not entitled to medical benefits, lost wages, or her bill of costs. Employer bases this allegation on an incorporation of all of the arguments presented in its brief. As we have determined that none of Employer's arguments have merit, we reject this claim.

■ As we have determined that none of the issues raised by Employer on appeal have merit, we now turn to Claimant's motion for counsel's fees. Pa. R.A.P. 2744 provides that a reasonable counsel fee may be awarded by this Court where "it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." We believe Employer's appeal to be frivolous. We also believe that Claimant's request for $175.00 per hour multiplied by the three hours spent in preparation of this appeal to be more than fair.[6]

### ORDER

AND NOW, this 29th day of April, 2003, the order of the Workers' Compensation Appeal Board is affirmed and the petition for review of Westinghouse Electric Corporation/CBS (Employer) to this Court is deemed frivolous. Employer is hereby ordered to pay Counsel fees in the amount of five-hundred and twenty-five dollars ($525.00) to Dena Simon and her counsel, Daniel K. Bricmont, Esquire.

---

6. We note that the reproduced record in this case encompassed three-hundred and ninety-eight pages and Employer's appellate brief encompassed forty pages of argument.