IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Consol Pennsylvania Coal     :
Company/Bailey Mine and East     :
Coast Risk Management, LLC,     :
         Petitioner     :
    :
      v.     :  No. 230 C.D. 2019
    :  SUBMITTED: June 7, 2019
Workers' Compensation Appeal     :
Board (Williams),     :
         Respondent     :


BEFORE:     HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE ELLEN CEISLER, Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                FILED: August 13, 2019

Consol Pennsylvania Coal Company/Bailey Mine and East Coast Risk Management, LLC (Employer), petitions this Court for review of the February 1, 2019 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ), which denied Employer's petition to terminate the workers' compensation benefits of Daniel Williams (Claimant) and amended the Notice of Compensation Payable (NCP) to include additional injuries. The issues before this Court are whether the WCJ's findings of fact are supported by substantial evidence, whether his opinion was reasoned, and whether the WCJ erred in *sua sponte* amending the NCP. After careful review, we affirm.

## I. Background

On August 31, 2016, Claimant sustained a work injury to his neck while unloading a coal mine car. Notes of Testimony (N.T.), 6/9/17, at 15. Employer accepted the work injury as a strain or tear of multiple upper extremities and issued an NCP on February 17, 2017. Certified Record (C.R.), Item No. 16.

Employer filed a termination petition on April 26, 2017, alleging that Claimant had fully recovered from his work injury. C.R., Item No. 2. Employer's petition was based on the opinion of Employer's medical expert, Dr. Brian Ernstoff, who performed an independent medical exam (IME) of Claimant on April 6, 2017, and Claimant's return to work as a coal miner without restrictions or loss of earnings on April 17, 2017. *Id.* Claimant filed an answer denying he had fully recovered from his August 31, 2016 work injury. C.R., Item No. 4.

A hearing on Employer's termination petition took place on June 9, 2017. Employer presented the deposition testimony and medical report of Dr. Ernstoff. Claimant testified on his own behalf and presented the medical report of his treating physician, Dr. Peter Gerszten.

### a. Employer's Evidence

Dr. Ernstoff examined Claimant on April 6, 2017. N.T., 8/16/17, at 11. In preparation for the IME, he reviewed Claimant's medical records, took Claimant's medical history, and performed a physical examination. *Id.* at 11-12. As of the date of the IME, Claimant treated his symptoms with Percocet, taken four times daily. *Id.* at 14. Claimant also received a cervical nerve block the day prior to the IME. *Id.* at 16. Upon physical examination, Dr. Ernstoff found Claimant had reduced range of motion in his cervical spine. *Id.* at 16. Dr. Ernstoff attributed this to a preexisting back condition for which Claimant underwent cervical fusion surgery in

2

2014. *Id.* at 17. He did not believe it was related to the August 31, 2016 work injury. *Id.* Although Claimant told Dr. Ernstoff that he continued to experience neck pain, Claimant did not report having any during the physical examination portion of the IME. *Id.* at 17-18. Claimant appeared neurologically intact and the remainder of the examination produced normal findings. *Id.* at 16-18.

Dr. Ernstoff also reviewed a December 4, 2016 magnetic resonance imaging scan (MRI) of Claimant's cervical spine and identified evidence of the 2014 surgery at the C6-7 level and some degenerative disc problems. *Id.* at 19. While he noted the presence of disc bulges at the C4-5 level of Claimant's cervical spine, Dr. Ernstoff found no signs of disc herniations at any level. *Id.* at 19, 48-49. Dr. Ernstoff agreed with the radiologist's report, which indicated a degenerative condition in Claimant's cervical spine at the C3-4 and C4-5 levels, but did not indicate the presence of disc herniations. *Id.* at 20-21. Based on the results of the IME and his review of Claimant's medical records, Dr. Ernstoff opined that Claimant suffered a cervical strain from the August 31, 2016 work incident and he had fully recovered from that work injury. *Id.* at 22.

On cross-examination, Dr. Ernstoff acknowledged that he is not board certified in either radiology or neurology.[1] *Id.* at 24. He admitted that the injection Claimant received prior to the IME was likely administered for the purpose of pain relief. *Id.* at 29. Such a treatment is not a cure and the pain "generally does come back." *Id.* at 30. Dr. Ernstoff admitted Claimant related that his pain was reduced by the injection. *Id.* at 31. He further acknowledged a note from Dr. Gerszten in Claimant's medical records which indicated the nerve blocks gave Claimant "great relief of pain." *Id.* at 32. With regard to Claimant's limited range of motion in his

---

[1] Dr. Ernstoff is board certified in physical medicine and rehabilitation. N.T., 8/16/17, at 9.

3

cervical spine, Dr. Ernstoff agreed he could not differentiate whether it was caused by the 2014 surgery or the August 31, 2016 work injury. *Id.* at 44. He did not ask Claimant how long the limitations with his range of motion had persisted. *Id.*

Dr. Ernstoff's written report corroborates that Claimant advised having received a nerve block the day prior to the IME. N.T., 8/16/17, Ex. A at 2. Dr. Ernstoff opined that any treatment rendered, including the nerve blocks, were required solely for Claimant's chronic pain issues and not the August 31, 2016 work injury of a cervical strain. *Id.* at 4-5. Claimant had fully recovered from that injury. *Id.* at 5.

### b. Claimant's Evidence

### i. Claimant's Previous Neck Injury

Claimant acknowledged having suffered a prior neck injury at the C6-7 level of his cervical spine which required surgery in December 2014.[2] N.T., 6/9/17, at 10. Prior to that surgery, which Dr. Gerszten performed, Claimant's symptoms included severe neck pain, numbness in both his arms, and a sensation of grinding in his neck, "like broken glass." *Id.* at 10. Following the 2014 surgery, Claimant continued to experience inflammation in his neck, but the grinding and numbness were gone. *Id.* at 11.

Approximately three months after the 2014 surgery, Claimant returned to work. *Id.* at 12. Initially, Claimant worked above ground at Employer's coal mine, but shortly thereafter, he worked underground as a trackman, a position which involved heavy lifting and the use of jackhammers. *Id.* at 12-13.

Claimant discontinued treatment with Dr. Gerszten. *Id.* at 18. Any residual neck pain was managed by Dr. Brian Slater, who prescribed five milligrams of

---

[2] The exact circumstances of Claimant's prior injury are not set forth in the certified record.

Oxycodone to be taken twice a day. *Id.* Claimant generally took half the prescribed dosage. *Id.* at 19. Claimant sought the services of a chiropractor every two or three months for purposes of adjusting his back. *Id.* Claimant's chiropractic treatments were not for the purpose of addressing his neck pain. *Id.*

### ii. Claimant's Work Injury

At the time of his work injury, Claimant worked as a hoist man, dropping supply cars into the mine and pulling them out. *Id.* at 14. Claimant also operated a frontend loader, which Claimant described as having no suspension and very jarring to drive. *Id.* at 14-15.

On August 31, 2016, while unloading a supply car, Claimant heard a pop in his neck. *Id.* at 15. At the time, he was tossing a packing pallet that weighed approximately 30-40 pounds. *Id.* Claimant had no immediate pain and finished unloading the supply car. *Id.* Within an hour or so, however, Claimant experienced swelling on the right side of his neck such that he could not move it. *Id.* at 16. Claimant took two days off from work and sought treatment from his family doctor, who sent him to the emergency room. *Id.* at 17. The emergency room ordered a computerized axial tomography scan (CT scan). *Id.*

Thereafter, Claimant treated with Dr. Slater, who prescribed Claimant muscle relaxants, "pain patches," and doubled his dosage of Oxycodone. *Id.* at 19-20. Claimant sought the advice of Dr. Gerszten, who administered nerve blocks in his neck. *Id.* at 21. As of the date of his testimony, Claimant had received two such nerve blocks. *Id.* at 22. Although Claimant initially returned to work two days after his work injury, he was taken out of work on February 4, 2017 for approximately two months after Dr. Gerszten ordered him to undergo physical therapy. *Id.* at 17,

5

22. Claimant resumed his job as a hoistman without restrictions in April 2017. *Id.* at 23.

Claimant testified that the nerve blocks administered by Dr. Gerszten provided approximately 70 percent relief from his neck pain, however, he suffered numbness in his arms while sleeping. *Id.* at 24-25. Claimant did not experience this numbness prior to his August 31, 2016 work injury. *Id.* at 26. The nerve blocks provided sufficient relief such that Claimant's dosage of Oxycodone was reduced to the levels prescribed prior to the date of his work injury. *Id.* at 36. Having received a nerve block on April 5, 2017, the day prior to the IME, Claimant felt "pretty good" during the examination. *Id.* at 24. By June 9, 2017, the date Claimant testified before the WCJ, the effects of the nerve block had begun to wear off. *Id.* at 25.

### iii. Claimant's Expert Medical Evidence

Dr. Gerszten, a board-certified neurosurgeon, provided a written report dated June 5, 2017, detailing his treatment of Claimant. N.T., 6/9/17, Ex. A. Claimant's first post-injury evaluation took place on November 4, 2016, approximately two months after the August 31, 2016 work injury. *Id.* at 1. Following that appointment, Dr. Gerszten ordered the December 4, 2016 MRI. *Id.* Dr. Gerszten opined that the MRI results indicated disc herniations at the C3-4, C4-5, and C5-6 levels of Claimant's cervical spine. *Id.* Claimant's symptoms of progressive neck pain and numbness in his upper extremities were consistent with such a diagnosis. *Id.* Dr. Gerszten related the disc herniations to Claimant's August 31, 2016 work injury. *Id.* Non-surgical management in the form of physical therapy and injection therapy was recommended. *Id.*

Having read the report of Dr. Ernstoff, Dr. Gerszten disagreed with his opinion that Claimant had recovered from his work injury. *Id.* at 2. He noted that

6

Claimant received a nerve block injection at the C4-5 level the day before Dr. Ernstoff's IME and achieved significant relief from his pain. *Id.* As a result, Claimant was "doing rather well from a pain perspective" on the date of the IME. *Id.* Claimant's pain eventually returned, necessitating a second injection. *Id.* at 2. The relief provided confirmed Dr. Gerszten's opinion that Claimant suffered a disc herniation at the C4-5 level and that injury caused his pain.

Dr. Gerszten's prognosis for Claimant was guarded, as he continued to have pain which required the administration of nerve blocks and oral medication. *Id.* Dr. Gerszten suggested Claimant may require additional nerve block injections and physical therapy, as well as oral pain medication and muscle relaxants for the foreseeable future. *Id.*

### c. WCJ Decision

The WCJ issued a decision denying Employer's termination petition. Based on Claimant's credible testimony, the WCJ found that, prior to the August 31, 2016 work injury, Claimant performed a physically demanding job, and Claimant's prior history of severe neck pain, numbness in his arms, and grinding in his neck were resolved by the 2014 surgery. Findings of Fact (F.F.) No. 4(c), 4(e).

Having summarized the relevant medical evidence, the WCJ found the opinion of Dr. Gerszten more credible than that of Dr. Ernstoff. F.F. No. 9. The WCJ based his credibility determination on Dr. Gerszten's status as both a board-certified neurosurgeon and Claimant's treating physician. *Id.* The WCJ rejected Dr. Ernstoff's opinion to the extent it conflicted with that of Dr. Gerszten. *Id.* The WCJ found that Claimant's pain was masked by the nerve block received the day prior to the IME, a fact which Dr. Ernstoff acknowledged on cross-examination. *Id.* While

7

Claimant's pain was improved the day of the IME, it returned, necessitating additional nerve block injections. *Id.*

Based on his analysis of the evidence, the WCJ concluded that Claimant suffered a work injury to his cervical spine at the C3-4, C4-5, and C5-6 levels on August 31, 2016, and the C4-5 disc herniation was the cause of Claimant's symptoms. WCJ Decision, Conclusion of Law (C.O.L.) No. 2. As a consequence, the WCJ amended the NCP to include these injuries. *Id.* Because Employer did not establish that Claimant had recovered from the injuries to his cervical spine, Employer did not meet the burden required to terminate Claimant's benefits. C.O.L. No. 3. However, Employer did establish that Claimant returned to work on April 17, 2017 with no loss of wages. *Id.* Therefore, Claimant's benefits were suspended as of that date. *Id.* Employer's termination petition was dismissed. WCJ Decision at 12. Employer appealed to the Board, which affirmed.

## II. Issues

On appeal,[3] Employer argues the findings of the WCJ are not supported by substantial evidence, his opinion was not reasoned, and the WCJ had no authority to amend the NCP *sua sponte* to include additional injuries.

## III. Analysis

### a. Substantial Evidence

First, we address Employer's argument that the WCJ's findings of fact were not supported by substantial evidence. Employer's argument is premised in part on

---

[3] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Grimm v. Workers' Comp. Appeal Bd. (Fed. Express Corp.)*, 176 A.3d 1045, 1051 n.4 (Pa. Cmwlth.) (*en banc*), *appeal denied*, 189 A.3d 385 (Pa. 2018). Substantial evidence is such evidence that a reasonable mind would deem adequate to support a conclusion. *Iacono v. Worker's (sic) Comp. Appeal Bd. (Chester Housing Auth.)*, 624 A.2d 814, 817 (Pa. Cmwlth. 1993).

its assertion that Dr. Gerszten's expert report constituted inadmissible hearsay, as Dr. Gerszten did not testify and his report was not subject to cross-examination.

With regard to the admission of medical records, Section 422(c) of the Workers' Compensation Act (Act)[4] provides in relevant part:

> [w]here any claim for compensation at issue before a [WCJ] involves [52] weeks or less of disability, either the employe or the employer may submit a certificate by any health care provider as to the history, examination, treatment, diagnosis, cause of the condition and extent of disability, if any, and sworn **reports by other witnesses as to any other facts and such statements shall be admissible as evidence of medical and surgical or other matters therein stated and findings of fact may be based upon such certificates or such reports.** Where any claim for compensation at issue before a [WCJ] exceeds [52] weeks of disability, a medical report shall be admissible as evidence unless the party that the report is offered against objects to its admission.

77 P.S. § 835 (emphasis added). In essence, under Section 422(c), where a workers' compensation claim involves disability of 52 weeks or less, medical reports are admissible without the need for sworn testimony. *Ruth Family Med. Ctr. v. Workers' Comp. Appeal Bd. (Steinhouse)*, 718 A.2d 397, 402 (Pa. Cmwlth. 1998). For workers' compensation purposes, "disability" is synonymous with loss of earning power. *Id.*

Here, Claimant's workers' compensation benefits did not exceed 52 weeks, as he sustained the work injury on August 31, 2016, and returned to work on April 17, 2017, with no further loss of wages or earning power. Consequently, we conclude that Dr. Gerszten's report was admissible under Section 422(c). Whether

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 26, 1915, P.L. 642, 77 P.S. § 835.

9

the report addressed the issues at hand and was persuasive are questions relating to credibility and to weight of the evidence rather than to admissibility. It was wholly appropriate for the WCJ to make findings of fact based on that report. Employer's hearsay argument lacks merit.

Next, we consider whether the WCJ's findings of fact were otherwise supported by substantial evidence. The WCJ is the ultimate finder of fact and the exclusive arbiter of credibility and evidentiary weight. *LTV Steel Co., Inc. v. Workers' Comp. Appeal Bd. (Mozena)*, 754 A.2d 666, 676 (Pa. 2000). As the ultimate factfinder, the WCJ has exclusive authority to resolve conflicts in testimony. *Pa. Tpk. Comm'n v. Workers' Comp. Appeal Bd. (Collins)*, 709 A.2d 460, 464 (Pa. Cmwlth. 1998). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *O'Donnell v. Workers' Comp. Appeal Bd. (United Parcel Serv.)*, 831 A.2d 784, 789 (Pa. Cmwlth. 2003). So long as the findings of the WCJ are supported by substantial evidence, they must be accepted as conclusive on appeal. *Id.*

To succeed in its termination petition, Employer had the burden of establishing that Claimant's work injury had ceased or that any existing injury was not the result of his work injury. *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 53 (Pa. Cmwlth. 2011). Employer could satisfy that burden by presenting unequivocal and competent medical evidence that Claimant had fully recovered from his work injury. *Id.*

Employer argues that the evidence does not support the WCJ's finding that Claimant's prior neck injury was resolved by the 2014 surgery or that Claimant was "pain and problem free prior to August 31, 2016." Employer's Br. at 10. Employer

10

suggests the evidence establishes that Claimant continued to suffer neck pain and inflammation and therefore his current condition is related to his prior neck injury.

The essence of Employer's argument is that the evidence supports a contrary finding. Employer's argument misapprehends this Court's role as an appellate court. This Court's purpose is not to substitute findings we could have made had we been the factfinder. It does not matter that the record supports a contrary finding; the pertinent inquiry is whether there is substantial evidence which supports the findings the WCJ actually made. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). As to that, we cannot agree with Employer that the WCJ's findings lack support in the record.

Claimant testified that, despite continued issues with inflammation, the 2014 surgery resolved his severe neck pain, the numbness in his arms, and the grinding in his neck. Prior to the August 31, 2016 work injury, Claimant performed a very physical job. While he took medication prescribed for his prior neck injury, he only took half the recommended dosage. The WCJ deemed this testimony credible. We will not overturn the WCJ's credibility determinations on appeal merely because Employer seeks a different result.[5]

### b. Reasoned Decision

Employer next argues that the WCJ's decision was not reasoned as required by Section 422(a) of the Act, which provides in pertinent part:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole

---

[5] Curiously, Employer also takes issue with the WCJ's finding that Claimant underwent a C6-7 fusion surgery in 2014, as that injury is unrelated to the current injury. Notwithstanding its relevance to the present matter, WCJ's finding is clearly supported by Claimant's testimony, the report of Dr. Gerszten, and the testimony of Employer's own medical expert.

11

> which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached.

77 P.S. § 834.

Employer contends the WCJ's decision amounts to a summary of the medical evidence presented and the WCJ otherwise "failed to articulate objective reasoning to facilitate appellate review." Employer's Br. at 11.

"[A] decision is 'reasoned' for purposes of Section 422(a) if it allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). Where the WCJ "has had the advantage of seeing the witnesses testify and assessing their demeanor, a mere conclusion as to which witness was deemed credible, . . . could be sufficient to render the decision adequately 'reasoned.'" *Id.* at 1053. Resolution of conflicting medical testimony, however, where the medical experts have not testified live, cannot be supported by a mere announcement that one expert was deemed more credible than another. *Id.* "[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.*

Here, the WCJ did not merely summarize the medical evidence and assign a credibility determination to each expert. Rather, the WCJ outlined the evidence presented by each witness and set forth his reasons for rejecting Dr. Ernstoff's opinion to the extent it contradicted that of Dr. Gerszten. In favoring the report of Dr. Gerszten, the WCJ was persuaded by Dr. Gerszten's status as a board-certified neurosurgeon and Claimant's treating physician. The WCJ specifically rejected the opinion of Dr. Ernstoff based on an IME, because Claimant's pain was likely masked by the nerve block he received the previous day. Dr. Ernstoff admitted as much on

12

cross-examination. Claimant's pain returned after the IME, and he required a second nerve block to treat that pain. The WCJ's explanations of his findings are sufficient to allow for adequate appellate review and satisfy the reasoned decision requirement of Section 422(a).

### c. Amendment of NCP

Finally, Employer argues the WCJ improperly amended the NCP to include the additional injuries to Claimant's cervical spine. Employer acknowledges Section 413(a) of the Act permits the WCJ to correct an NCP. It nevertheless argues the WCJ did not have the authority to do so *sua sponte* and it was incumbent upon Claimant to file a petition for review of his benefits and request an amendment to the accepted work injury.

Section 413(a) of the Act expressly provides that a WCJ

> may, at any time, **review and modify or set aside a notice of compensation payable** and an original or supplemental agreement or upon petition filed by either party with the department, or **in the course of the proceedings under any petition pending before such [WCJ], if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.**

77 P.S. § 771 (emphasis added).

Employer's arguments that a review petition must be filed before the WCJ may amend an NCP is contrary to the plain language of Section 413(a) and our Supreme Court's decision in *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577 (Pa. 2009). In *Cinram*, our Supreme Court distinguished between the correction of an NCP by adding a diagnosis which is part of the original injury and the amendment of an NCP to recognize a subsequently-arising medical issue that is related to the original injury. *Id.* at 580-81. Although the latter requires the filing of a review petition, the Court explicitly held that a

13

review petition is not required as support for a mere correction of an NCP. *Id.* at 583.

Here, the record confirms that the WCJ made merely a corrective amendment. Dr. Gerszten opined that the C3-4, C4-5, and C5-6 disc herniations revealed in Claimant's December 4, 2016 MRI were caused by the August 31, 2016 work accident. This evidence supports the WCJ's conclusion that Claimant suffered disc herniations on August 31, 2016. As such, this condition is part of, rather than a consequential condition of, the original work injury, and we discern no error in the WCJ's amendment to the NCP.

## IV. Conclusion

The WCJ's findings of fact are supported by substantial evidence and his decision was sufficiently reasoned as required by Section 422(a) of the Act. Section 413(a) of the Act permits the WCJ to amend the NCP and the WCJ did not err in so doing. Accordingly, we affirm the Board.[6]

_____
ELLEN CEISLER, Judge

---

[6] Employer's remaining arguments relate to issues over typos and stylistic errors, which, at worst, constitute harmless error. As such, we will not address them further.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Consol Pennsylvania Coal Company/Bailey Mine and East Coast Risk Management, LLC, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 230 C.D. 2019 |
| | : | |
| Workers' Compensation Appeal Board (Williams), | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 13th day of August, 2019, the February 1, 2019 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge