Jacqueline O'NEILL, Petitioner

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (NEWS CORP.
LTD.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 4, 2011.
Decided June 15, 2011.
Publication Ordered Sept. 15, 2011.

Jonathan E. Butterfield, Williamsport, for appellant.

Karyn Dobroskey Rienzi, Philadelphia, for respondent News Corp., Ltd.

BEFORE: COHN JUBELIRER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Jacqueline O'Neill (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed an order of a Workers' Compensation Judge (WCJ). Pursuant to the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2708, the WCJ's order granted the Termination Petition of News Corp. Ltd. (Employer), denied Employer's Utilization Review Petition, and granted Claimant's Petition to Review Medical Treatment (Travel Expenses).[1] We affirm.

---

1. The WCJ in his Decision, and the Board in its address of the WCJ's Decision, attribute the filing of the Utilization Review Petition to Claimant. The Utilization Review Petition itself appears to have been filed by Employer, and the Board docket entries also indicate that Employer filed the Utilization Review Petition. *See* Certified Record (C.R.), Petition for Review of Utilization Review Determination; S.R.R. at 2b. Although Claimant, in her appeal to the Board, alleged error in the attribution of the Utilization Review Petition to Claimant (*see* C.R., Appeal From Judge's Findings of Fact and Conclusions of Law), the Board did not address this issue in its opinion, and Claimant has not raised it before this Court. The misattribution of the party filing the Utilization Review Petition, however, is of no moment to our instant disposition.

On November 1, 1993, Claimant injured her left wrist in the course and scope of her work as a stenographer for Employer, and thereafter began receiving benefits under the Act pursuant to a Notice of Compensation Payable (NCP) describing her injury as left carpal tunnel syndrome. In prior litigation not at issue herein, a Termination Petition brought by Employer was denied by a WCJ, and the description of Claimant's injury was expanded to encompass diagnoses of cumulative trauma disorder, bilateral carpal tunnel, thoracic outlet, scapholunate ligament injury, and depression. By WCJ decision and order circulated December 9, 1998 (WCJ Decision I), Claimant began receiving total disability benefits under the Act. Thereafter, the parties stipulated that Claimant no longer suffers from depression.[2]

On September 17, 2007, Employer filed the instant Termination Petition, alleging full recovery based upon the medical opinion of Dr. Stephen Cash. On October 9, 2007, Claimant filed a Petition to Review Medical Treatment (Travel Expense) (hereinafter, the Review Petition) alleging unpaid medical bills, and seeking reimbursement for prescription expenses and for mileage incurred in her travel to receive specialized care. Claimant and Employer filed timely answers to the respective Petitions. On January 18, 2008, Employer filed a Petition to Review Utilization Review Determination (Utilization Review Petition). The three Petitions were thereafter consolidated for hearings before the WCJ.

The following facts are based upon the WCJ's findings in this matter. In part relevant hereto, Claimant testified as to her continuing suffering from pain and symptomology related to her injuries. Included in Claimant's evidence and testimony were assertions that after her injury over 15 years ago, Claimant has not worked or attempted to find employment in the past 14 years, and has treated with Scott Martin Fried, D.O. Claimant testified that her medical condition has worsened over the last 14 years. Claimant received only one surgery related to her work injuries, namely an implantation of a spinal cord stimulator. Claimant testified that she exercises at home, but could not attend Dr. Fried's prescribed physical therapy due to her inability to afford to drive to the location of the therapy.

Claimant also presented the deposition testimony of Dr. Fried, who testified that Claimant continues to suffer from the effects of her diagnosed conditions, and that she has not fully recovered from her work-related injuries. Dr. Fried testified that despite 10 years of treatment, Claimant's condition has not improved. Dr. Fried testified that his treatments of Claimant, including SSEP testing and prescriptions including Prevacid, Hydrocodone, Naproxen, and Cyclobenzaprine, were reasonable and necessary.

Employer presented the deposition testimony of Stephen L. Cash, M.D. Dr. Cash's testimony included assertions that the EMGs relied upon by Dr. Fried were unreliable, and that Dr. Fried's treatments were neither reasonable nor necessary. Dr. Cash further testified that as of the date of his examination of Claimant on August 7, 2007, Claimant had fully recovered from her work-related injuries and was capable of returning to full, unrestrict-

---

2. In additional proceedings not at issue herein, a WCJ decision and order circulated February 28, 2006, modified Claimant's benefits to reflect the availability of suitable employment within Claimant's restrictions, and granted Claimant's Petition for Review of Utilization Review, concluding that Claimant's ongoing medical treatment was both reasonable and necessary. See Supplemental Reproduced Record (S.R.R.) at 39b.

ed activity. Dr. Cash testified that while his examination noted Claimant's complaints of pain, his examination revealed no physical explanation for those complaints. Dr. Cash noted that Claimant's medical history was positive for a high degree of symptom exaggeration.

The WCJ rejected as not credible the testimony of both Claimant and Dr. Fried. The WCJ accepted as credible the testimony of Dr. Cash, and further concluded that Dr. Cash had accepted the previous findings in this case regarding Claimant's work-related injuries, including the prior finding that Claimant suffered from thoracic outlet syndrome. The WCJ further concluded that Dr. Cash's medical opinion was competent, and supported a finding that Claimant was fully recovered from her work-related injuries.

Regarding Claimant's Review Petition seeking mileage reimbursement, the WCJ found that Claimant's testimony and evidence that she was unsuccessful in locating a local doctor to treat her thoracic outlet syndrome stood unrebutted by Employer. Although he found that Employer had a reasonable basis to contest Claimant's request for reimbursement on this issue, the WCJ found that Claimant's mileage was reimbursable, and so ordered in accordance with Claimant's submitted mileage costs. However, the WCJ found that Claimant was not entitled to any litigation expenses, in that none of the costs entered upon the record were related to the Review Petition seeking mileage reimbursement.

By decision and order dated March 30, 2009 (WCJ Decision II), the WCJ granted Employer's Termination Petition effective August 7, 2007, denied and dismissed the Utilization Review Petition, granted Claimant's Review Petition, and ordered that Claimant's mileage reimbursement request was compensable by Employer.

Claimant timely appealed to the Board, which affirmed by opinion and order dated September 30, 2010. Claimant now petitions for review of the Board's order.

This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or a violation of Board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

█ An employer seeking to terminate a claimant's benefits must prove that a claimant's disability has ceased, or that any existing injury is not the result of the work-related injury. *Jaskiewicz v. Workmen's Compensation Appeal Board (James D. Morrisey, Inc.)*, 651 A.2d 623 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 541 Pa. 628, 661 A.2d 875 (1995). An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from the work-related injury. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 141 Pa.Cmwlth. 253, 595 A.2d 697 (1991).

█ Claimant first argues that Dr. Cash's medical opinion was incompetent, in that he disbelieved Claimant's recognized work injury diagnosis, which had been previously determined in WCJ Opinion I. Claimant relies primarily on *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087 (Pa. Cmwlth.2001), and its related cases. In *Wagman*, we affirmed a Board decision that reversed a WCJ grant of an employer's termination petition, holding that a doctor's testimony was insufficient to support a termination of benefits on the basis that the medical evidence presented by employer was inconsistent with the injury

description in the NCP. *Wagman*, 785 A.2d at 1091–1092. The NCP in that case described the injury at issue—the description of which was not litigated-as an exacerbation of pseudarthrosis; however, the medical evidence presented by employer was inconsistent with the NCP, and the employer's doctor did not recognize that the claimant ever suffered from exacerbation of pseudarthrosis. *Id.* The doctor testified that the claimant also suffered from multiple level degenerative lumbar disc disease, agreed that pseudarthrosis was also evident, but then testified "I agree there is a pseudarthrosis that I think is of no consequence here." *Id.* at 1089. Therefore, we held that it was impossible for the doctor to give an opinion that claimant had fully recovered from that accepted injury, and thusly the doctor's testimony was not sufficient to support a termination of benefits. *Id.*

Claimant argues that, in the instant matter, Dr. Cash's rejection of Claimant's recognized work-related injury similarly renders his testimony incompetent in that Dr. Cash's testimony is the functional equivalent of the expert testimony in *Wagman* and its progeny. *See also Westmoreland County v. Workers' Compensation Appeal Board (Fuller)*, 942 A.2d 213 (Pa.Cmwlth. 2008) (where accepted injury was a herniated disc, employer's physician testimony was legally insufficient to support a termination where physician characterized the original injury as a strain); *Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.)*, 936 A.2d 1195 (Pa.Cmwlth. 2007), *petition for allowance of appeal denied*, 596 Pa. 463, 944 A.2d 752 (2008) (where accepted injury was a herniated nucleus pulposus, employer's physician testimony was legally insufficient to support a termination where physician characterized the original injury as a sprain or strain of the back); *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 584 Pa. 703, 882 A.2d 1007 (2005) (where accepted injury was chronic sciatica and right-sided L5–S1 radiculopathy, employer's physician testimony was legally insufficient to support a termination where physician testified that claimant suffered only lumbar strain and sprain as the result of his work injury and that Claimant has recovered only from that lumbar strain and sprain.); *U.S. Steel Mining Co., LLC v. Workers' Compensation Appeal Board (Sullivan)*, 859 A.2d 877 (Pa.Cmwlth.2004) (in fatal claim petition proceeding, doctors' opinions held incompetent where they testified that decedent never suffered from coal workers' pneumoconiosis, despite an earlier determination under the Act of that same irreversible work-related diagnosis).

Claimant in the instant matter asserts that Dr. Cash rejected Claimant's prior diagnosis of thoracic outlet syndrome, a progressive disorder. *See* WCJ Decision I, at 5–9, 14. Claimant cites to the following emphasized portions of Dr. Cash's testimony in the instant matter, in support of her argument that he failed to recognize her established diagnosis of thoracic outlet syndrome:

Q (Claimant's attorney): Now, I think you've indicated that you disagree with Dr. Fried's diagnoses and treatment modalities for [Claimant]; is that correct?

A: Well, I don't think I would say that I disagree with them. I think that's putting it strongly. I think Dr. Fried came up with a plethora of diagnoses that I found no evidence of when I saw [Claimant]. **What I find objectionable is that [Claimant] treated with [Dr. Fried] for umpteen years with therapy of many different varieties without any improvement. She doesn't seem**

to be any better now than she was 13 or 14 years ago.

So I find it very distressing, to say the least, that she's been going there for all these years and he's been continuing to do the same treatment to no benefit.

\*      \*      \*

Q: In your medical opinion, did [Claimant] sustain a thoracic outlet syndrome as a result of her work activities [for Employer]?

A: **I'm extremely skeptical she suffered any particular injury when working [for Employer].** You have to remember, she was maybe 20 or 21 when this whole thing started. She worked for a short period of time, a job that didn't involve any overhead reaching. The likelihood of **somebody that age with that type of job suffering from a bilateral thoracic outlet is so unlikely and implausible that, frankly, I don't buy it. It may have been accepted by the judge, but I'm pretty skeptical that she actually suffered anything working at that job.**

S.R.R. at 68b–70b (emphasis added).

Within the context of an employer's termination petition, the employer may not relitigate the nature of any accepted work-related injury that has previously been established. *Wagman,* 785 A.2d at 1092. As such, we have consistently held that a medical opinion that does not recognize the work-relatedness of an injury previously determined to be work-related is insufficient to support a termination of benefits. *Westmoreland County,* 942 A.2d at 218.

However, as Employer argues herein, a review of Dr. Cash's testimony as a whole reveals that he did not reject, or expressly refuse to recognize, Claimant's accepted thoracic outlet syndrome as a work-related injury in this matter. Notwithstanding Dr. Cash's expressed skepticism as noted by Claimant, his testimony as a whole is akin to testimony this Court has found to be competent and legally sufficient to support a termination of benefits.

The facts of the medical testimony in this matter are similar to those in *To v. Workers' Compensation Appeal Board (Insaco, Inc.),* 819 A.2d 1222 (Pa.Cmwlth. 2003). In *To,* we distinguished that matter from *Wagman,* and affirmed a grant of an employer's termination petition where the employer's medical expert expressed similar skepticism. We wrote:

Our review of Dr. Mauthe's deposition testimony in the present matter reveals that **Dr. Mauthe testified that based on Claimant's symptoms and Claimant's description of his work injury he was unable to see how the work injury could possibly happen ... However, Dr. Mauthe did not testify that Claimant never had a work injury.** It is clear from a review of Dr. Mauthe's entire testimony that, due to Claimant's significant symptom magnification, the doctor was attempting to ascertain exactly how Claimant suffered an injury in the manner described by Claimant when Dr. Mauthe's physical examination did not support Claimant's complaints which Claimant alleged arose out of that injury.

**Dr. Mauthe credibly testified that he believed that there was no connection between Claimant's current complaints and the event that may or may not have occurred in the course of his employment with Employer ...** Dr. Mauthe also credibly testified that Claimant had a normal physiologic examination, that there was no evidence of a medical impairment, and, given the lack of an impairment and significant symptom embellishment, that there was no reason for ongoing medical care ...

Finally, **Dr. Mauthe specifically opined that it was his opinion, within a reasonable degree of medical certainty, having reviewed all the records, performed an examination and taken a history, that since there was no evidence of medical impairment, Claimant had made a full and complete recovery from any injury he may have sustained in the course of his employment** with Employer on or about April 23, 1999 . . .

Accordingly, we reject Claimant's argument that Dr. Mauthe's testimony does not support a termination because that testimony is incompetent.

*To*, 819 A.2d at 1225 (emphasis added).

A review of Dr. Cash's entire testimony in the case *sub judice* reveals a similar absence on his part in flatly rejecting that any work-related injury occurred, a similar history of symptom magnification by the Claimant, and credible medical testimony within a reasonable degree of medical certainty that any remaining complaints are not related to the accepted work injuries and that Claimant is fully recovered. As in *To*, the WCJ herein found the medical expert's testimony to be credible.[3]

Claimant's citation to narrowly selected portions of Dr. Cash's testimony fails to acknowledge that Dr. Cash recognized Claimant's medical history in this matter, which history included multiple instances of medical recognition of symptom magnification and/or poor validity of effort in diagnostic testing. S.R.R. at 58b–59b. Dr. Cash testified as to the prior diagnoses of Claimant as suffering from, *inter alia,*

thoracic outlet syndrome. S.R.R. at 57b–59b. Dr. Cash testified that after examining Claimant's medical records, and after examining Claimant herself, he found no abnormalities in relation to her upper extremities, and no connection between her physical condition and her continuing symptoms. S.R.R. at 58b–62b. Dr. Cash further testified:

Q (Employer's attorney): Doctor, did you also complete the Physician's Affidavit of Recovery that's attached?

A: Yes.

Q: And in the Physician's Affidavit of Recovery, **what diagnosis did you give to the [C]laimant's current work injury ?**

A: Well, I—let me find it. **She apparently had a certain number of diagnoses that had been accepted, and these are listed as bilateral carpal tunnel syndrome, thoracic outlet, cumulative trauma disorder and left wrist injury. I think those are what the accepted work injury was, but I didn't find any of those conditions** *when I saw her.*

Q: **Do you have an opinion as to whether or not she would have fully recovered from those conditions as of your [Independent Medical Examination]?**

A: **I believe she has, yes.**

Q: And did you place any restrictions on her?

A: No.

**3.** It is axiomatic that the WCJ, as the ultimate fact finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa. Cmwlth. 461, 593 A.2d 921, *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991). As such, determinations as to witness credibility and evidentiary weight are not subject to appellate review. *Hayden v. Workmen's Compensation Appeal Board (Wheeling Pittsburgh Steel Corp.)*, 83 Pa. Cmwlth. 451, 479 A.2d 631 (1984).

S.R.R. at 63b–64b (emphasis added). Dr. Cash's testimony does demonstrate his acceptance of Claimant's diagnoses, notwithstanding his skepticism, and further demonstrates his medical opinion of her recovery therefrom.

Moreover, on cross-examination, Dr. Cash expressly testifies that he does not disagree with Dr. Fried's diagnosis and treatment, before he continues to express his skepticism with Dr. Fried's lengthy course of treatment upon Claimant without improvement. S.R.R. at 68b–69b. Nothing within Dr. Cash's expression of his skepticism can be read to reject the accepted diagnoses herein in relation to his medical opinion of Claimant's recovery. *Id.*

Additionally on this issue, after again expressing his skepticism in this matter as relied upon by Claimant in her argument, Dr. Cash states:

> Q (Employer's attorney): Doctor, I just want you to hypothetically assume the [C]laimant was correctly diagnosed with bilateral carpal tunnel syndrome, thoracic outlet syndrome, cumulative trauma disorder and a left wrist injury. If those diagnoses were correct at the time they were found, do you have an opinion as to whether or not she's fully recovered from those as of your [Independent Medical Examination]?
>
> A: I believe she has fully recovered.

S.R.R. at 70b. We have recently emphasized that a medical expert need not necessarily believe that a particular work injury actually occurred, and that the expert's opinion is competent if he assumes the presence of a previously accepted work-related injury and finds it to be resolved by the time of his examination. *Hall v. Workers' Compensation Appeal Board (America Service Group)*, 3 A.3d 734 (Pa. Cmwlth.2010). For this additional reason, Dr. Cash's testimony was not incompetent.

Accordingly, given Dr. Cash's testimony as a whole, the Board did not err in concluding that his testimony was competent, and did not err in concluding that his testimony was sufficient to satisfy Employer's burden on its Termination Petition. *To; Koszowski.*

Claimant also argues that Dr. Cash's testimony is incompetent due to its equivalence. Without citation, Claimant notes Dr. Cash's general assertion that he found no abnormalities in his examination of Claimant. Claimant then cites to Dr. Cash's testimony that Claimant's left grip strength was 20 pounds, compared to a right grip strength of 50 pounds. S.R.R. at 61b. Claimant emphasizes Dr. Cash's testimony that Claimant complained of pain, weaknesses, shaking of her hands, and tingling and cold sensation in her upper extremities. S.R.R. at 56b.

■ The equivocality of a medical opinion is a question of law and fully reviewable by this Court. *Carpenter Technology v. Workmen's Compensation Appeal Board (Wisniewski)*, 144 Pa.Cmwlth. 72, 600 A.2d 694 (1991). Equivocality is judged upon a review of the entire testimony. *Id.* In conducting this review, we are mindful of our admonition in *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Cmwlth. 202, 465 A.2d 132 (1983), that to be unequivocal, every word of medical testimony does not have to be certain, positive, and without reservation or semblance of doubt. Additionally, it is an established principle that medical testimony is unequivocal if a medical expert testifies, after providing a foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists. *Shaffer v. Workmen's Compensation Appeal Board (Weis Markets)*, 667 A.2d 243 (Pa.Cmwlth.1995), *petition for allowance*

*of appeal denied,* 544 Pa. 618, 674 A.2d 1079 (1996). Even if a medical expert admits to uncertainty, reservation or lack of information with respect to medical details, the testimony remains unequivocal so long as the expert expresses a belief that, in his or her professional opinion a fact exists. *Id.*

■ Our review of Dr. Cash's testimony as a whole reveals an unequivocal opinion of Claimant's full recovery under the above-articulated standards, notwithstanding the two narrow statements relied upon in isolation by Claimant. Claimant's selected citation to Dr. Cash's testimony fails to acknowledge that, in relation to Claimant's complaints of pain, weaknesses, shaking of her hands, and tingling and cold sensation in her upper extremities, Dr. Cash was relaying the information he had gleaned from Claimant's medical history. S.R.R. at 55b–56b. Further, Claimant's reliance upon Dr. Cash's notation of Claimant's differing grip strengths fails to acknowledge her increase in grip when distracted, and her history of "symptom magnification" and "poor validity of effort." *Id.* at 58b–63b. As such, Claimant's equivocation argument is without merit, in light of Dr. Cash's testimony as a whole. *Shaffer.*

■ Finally, Claimant argues that the Board erred in failing to award Claimant reimbursement for the expense of deposing Dr. Fried, in that Dr. Fried's testimony was pertinent to Claimant's successful claim for mileage expenses accrued in attending her medical treatment.

■ Section 440(a) of the Act, 77 P.S. § 996(a),[4] authorizes an award to a claimant for a reasonable sum for certain litigation costs. Section 440(a) states, in relevant part:

In any contested case where the insurer has contested liability in whole or in part, . . . the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings. . . .

77 P.S. § 996(a). In order for litigation costs to be considered reasonable, and thus reimbursable under Section 440(a), they must "relate to the 'matter at issue' on which Claimant prevailed." *Jones v. Workers' Compensation Appeal Board (Steris Corp.),* 874 A.2d 717, 722 (Pa. Cmwlth.2005).

In the instant matter, the WCJ found:

27. The Claimant has also argued that attorney's fees should be ordered for an unreasonable contest, because the Employer has failed to identify a possible source of treatment in the Bloomsburg area, which would justify their opposition to the Claimant's request for the payment of mileage. Your Judge also finds this contention to be without merit. Although **Your Judge has found the Claimant's mileage to be reimbursable,** the Employer did have a reasonable basis to contest this request, based upon the legal arguments made, the history of the Claimant's treatment in Blue Bell, and because of their evidence of the existence of other orthopedic surgeons in this geographical area. These reports are rejected, as lacking credibility, because there is no indication that the doctors treated the Claimant's condition.

Although not sufficient for the Employer to prevail on this issue, these

<hr>

4. Added by the Act of February 8, 1972, P.L. 25, *as amended.*

facts do present a reasonable basis for the Employer's contest of the Claimant's mileage reimbursement request.

28. **The Claimant testified** that she asked for a referral from her family physician, and contacted the Geisinger Medical Center in an unsuccessful attempt to locate a local doctor who treats thoracic outlet syndrome. **The Claimant also testified** regarding two orthopedic surgeons in the area who would not treat her thoracic outlet syndrome.

Therefore, although there likely are physicians in the Claimant's geographic area who treat patients with thoracic outlet syndrome, the Employer has not entered into this record any evidence establishing that fact, and **the Claimant's testimony stands unrebutted.** The Claimant is entitled to reimbursement for her travel expenses that she incurred for treatment with Dr. Fried in Blue Bell, Pennsylvania, as set forth in Claimant's Exhibit Number Six.

29. **The Claimant has shown that her treatment for thoracic outlet syndrome was not available locally;** [] **and that if the reimbursement for travel was not allowed, the treatment that the Claimant received from Dr. Fried would have been unavailable.**[]

WCJ Decision II at 8–9 (emphasis added; footnotes omitted). In his Summary of Rejected Evidence, the WCJ wrote:

35. The Claimant is not entitled to any litigation expenses, because she has not prevailed in the Termination Petition or the Utilization Review Petition. Although the Claimant has been successful on the Petition to Review Medical Treatment (Travel Expenses), **none of the costs entered into the record are related to that Petition.** Therefore, no litigation expenses are payable to the Claimant by the Employer.

*Id.* at 10 (emphasis added). The WCJ concluded:

4. The Claimant has met her burden of proving that her treatment with Dr. Fried in Blue Bell, Pennsylvania was not available locally, and that she had to travel to Blue Bell for that treatment. Further, that the Employer has not rebutted **her testimony** in that regard; and that her mileage request, as set forth in Claimant's Exhibit Six, is compensable.

*Id.* at 11 (emphasis added).

The narrow focus of Claimant's argument on this issue is the WCJ's failure to award the fees associated with Dr. Fried's deposition.[5] The Board, however, did not err in affirming the WCJ's order. The above-cited passages make clear that the WCJ's findings on Claimant's necessity to travel were based solely upon Claimant's own testimony, and not that of Dr. Fried. WCJ Decision II, Finding of Fact 28, Conclusion of Law 4. That finding, and the related conclusion drawn therefrom, is supported by substantial evidence [6] of record. *Lehigh County.* There is nothing

---

5. In her brief to this Court, Claimant also argues that the Board erred in failing to award the costs of the transcript for the proceedings before the WCJ on September 11, 2008, at which Claimant testified regarding her necessity to travel to receive treatment. Claimant, however, has waived this issue by failing to raise it within her petition for review, as well as her failure to raise it within the Statement of Questions Involved section of her brief. *See* Pa.R.A.P. 1513(d), 2116;

*City of Philadelphia v. Workers' Compensation Appeal Board (Ford–Tilghman),* 996 A.2d 569 (Pa.Cmwlth.2010).

6. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods v. Workmen's Compensation Appeal Board (Clouser),* 114 Pa. Cmwlth. 382, 539 A.2d 11 (1988).

within the WCJ's Decision on the issue of Claimant's travel expenses that relies upon any testimony of Dr. Fried; in fact, there is no testimony offered by Dr. Fried in these entire proceedings that was found credible or concomitantly accepted by the WCJ. As Claimant's testimony is unmistakably the sole basis for the WCJ's award of travel reimbursement costs, Dr. Fried's unaccepted and/or rejected deposition testimony is not related to the matter at issue on which Claimant prevailed, and thus the litigation costs associated therewith are not reimbursable under Section 440(a) of the Act. *Jones.*

Accordingly, we affirm.

## ORDER

AND NOW, this 15th day of June, 2011, the order of the Workers' Compensation Appeal Board dated September 30, 2010, at A09–0740, is affirmed.