# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heartland Employment Services, LLC,                  :
                Petitioner            :
                                     :
         v.                  :  No. 544 C.D. 2018
                                     :  SUBMITTED: September 7, 2018
Workers' Compensation Appeal                         :
Board (Ebner),                                       :
                Respondent            :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                          FILED:  February 25, 2019

Heartland Employment Services, LLC (Employer) petitions for review of the March 20, 2018 Order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of the Workers' Compensation Judge (WCJ) awarding Denise Ebner (Claimant) benefits for wage loss and medical expenses. The issue before this Court is whether the WCJ erred in finding that Claimant was not fully recovered from her April 27, 2015 work injury. After thorough review, we affirm the Board's Order.

## Background

Claimant has worked as a registered nurse for Employer since February 23, 2015. Notes of Testimony (N.T.), 1/26/16, at 6. On April 27, 2015, Claimant injured her back while assisting a patient. *Id.* at 7-8. Employer accepted Claimant's injury as a lumbar strain and filed a Medical-Only Notice of Temporary Compensation

Payable (NTCP) on April 30, 2015. Certified Record (C.R.), Item No. 20, NTCP. The NTCP converted to a notice of compensation payable (NCP) by operation of law.[1] Claimant continued to work for Employer in a sedentary capacity through the end of her shift on August 18, 2015. N.T., 1/26/16, at 9, 11.

Claimant filed a claim petition on September 10, 2015, seeking lost wages and medical expenses for her injuries, "including but not limited to a lumbar strain." C.R., Item No. 2, Claim Petition, at 1. That same day, Claimant filed a penalty petition in which she alleged Employer violated the Act and the rules and regulations of the Department of Labor and Industry (Department) by failing to pay her compensation when due and file documents as required.[2] C.R., Item No. 5, Penalty Petition.

Employer filed answers to Claimant's petitions on September 18, 2015, admitting Claimant suffered a lumbar strain on April 27, 2015, but denying she was forced to stop working as a result of the injury, and denying it had violated any provisions of the Act or the Department's rules and regulations. C.R., Item Nos. 4, 7, Employer's Answers.

The WCJ held a hearing on January 26, 2016. Claimant testified on her own behalf. Expert medical testimony was presented subsequent to the hearing. Claimant submitted the deposition testimony of her orthopedic surgeon, Dr.

---

[1] Section 406.1(d)(2)(ii) of the Workers' Compensation Act (Act) provides that a claimant is entitled to a maximum of 90 days of temporary compensation. Act of June 2, 1915, P.L. 736, *as amended*, added by Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1(d)(2)(ii). Thereafter, unless the employer sends a notice denying liability for a claimant's injury to the claimant and the Department of Labor and Industry (Department) within the 90-day period during which temporary compensation is paid, the employer is deemed to have admitted liability and the notice of temporary compensation payable (NTCP) converts to a notice of compensation payable (NCP). 77 P.S. § 717.1(d)(6).

[2] The record does not disclose which provisions of the Act or rules and regulations of the Department were allegedly violated.

Matthew Eager. Employer submitted the deposition testimony of Dr. Amir Fayyazi, an orthopedic surgeon who performed an independent medical examination (IME) of Claimant on January 28, 2016.

Employer filed a termination petition on August 24, 2016, alleging Claimant had fully recovered from her work injury. C.R., Item. No. 8, Termination Petition. Claimant filed an answer on August 25, 2016, denying all allegations in Employer's petition. C.R., Item No. 10, Claimant's Answer.

### A. Claimant's Evidence

Claimant testified to the circumstances of her injury and the treatment she received for it. While working her April 27, 2015 shift, a patient grabbed Claimant's arm to pull himself into a standing position. N.T., 1/26/16, at 7-8. Claimant felt an "electric shock" through her neck. *Id.* at 8. Claimant reported the injury to her supervisor and finished her shift, despite being in pain. *Id.* at 8-9.

Later that day, Claimant contacted Employer and requested an appointment with Employer's "workplace doctor." *Id.* at 9. Thereafter, Claimant was evaluated and treated by a physician with "Mid-State," a medical facility located in Williamsport, Pennsylvania.[3] *Id.* at 9, 28. The treating physician placed Claimant on sedentary duty with the restriction that she could not lift over five pounds. *Id.* at 9. Claimant worked in that capacity for approximately three months. *Id.* at 10. During that time, Claimant's work restrictions increased, and Claimant's treating physician from Mid-State gave her permission to sit, lie down, and stand as needed. *Id.*

---

[3] The record does not further identify this treatment provider, the name of the facility, or the specific date upon which Claimant was first examined.

In June 2015, Claimant began treating with Dr. Paul Lin.[4] *Id.* at 11. Her work restrictions remained essentially unchanged, with Claimant prohibited from lifting more than 10 pounds and given permission to lie, sit, or stand as needed. *Id.* Claimant described her symptoms as a "throbbing, burning pain" in her lower back and weakness and pain in her legs, predominantly on the left side. *Id.* at 14. During her shift on August 17, 2015, Claimant was unable to stand or even sit, and she spent much of her shift lying down. *Id.* at 12. Claimant contacted Dr. Lin after her shift ended, and he took Claimant out of work as of August 18, 2015. *Id.* at 11.

Dr. Lin referred Claimant to Dr. Matthew Eager, an orthopedic surgeon and partner of Dr. Lin. *Id.* at 13. Dr. Eager performed spinal fusion surgery on Claimant's lumbar spine on October 5, 2015. *Id.* Claimant testified the surgery reduced the pain in her lower back and legs. *Id.* at 14-15. She felt capable of returning to her regular job as a registered nurse, with the exception of any duties that required heavy lifting. *Id.* at 15. Claimant stated she was capable of driving short distances of less than two hours' duration and could perform light cleaning around the house. *Id.* at 15, 17. Dr. Eager released Claimant to light-duty work as of January 11, 2016, and released her to work without restrictions as of February 9, 2016.[5] *Id.* at 28.

Claimant acknowledged she suffered a lumbar strain in the early 1990s, and was treated for low back pain in October 2011; however, she experienced no problems with her lower back the day before her work injury occurred. *Id.* at 19, 24.

Dr. Eager testified by deposition on March 1, 2016. He is a board-certified orthopedic surgeon specializing in spine surgery for the past six years. N.T., 3/1/16,

---

[4] Dr. Lin's medical specialty is not identified in the record.

[5] Dr. Eager's office notes indicate February 11, 2016 as the date Claimant could return to work without restrictions. N.T., 3/1/16, Ex. No. D-2.

4

at 7. He performs approximately 15 to 20 surgeries per month. *Id.* Dr. Eager first evaluated Claimant on September 4, 2015 following a referral from his partner, Dr. Lin, for consideration of a surgical fusion on her lumbar spine. *Id.* at 8-9. Dr. Eager believed the conservative treatments recommended by Dr. Lin, which included epidural injections, medication, and physical therapy, were appropriate but did not resolve Claimant's complaints. *Id.* at 10.

In the course of treating Claimant, Dr. Eager reviewed the results of an MRI scan taken on May 7, 2015. *Id.* at 10. He reviewed the images as well as the radiologist's report. *Id.* On the basis of the May 7, 2015 MRI results, as well as the medical records related to Dr. Lin's treatment, and Claimant's medical history, Dr. Eager diagnosed Claimant with a disc bulge and herniation at the L5-S1 region of Claimant's spine, degenerative disc disease, and an exacerbation of back pain due to the April 27, 2015 work injury. *Id.* at 11.

Dr. Eager testified he could not prove Claimant's herniation was caused by the work injury. *Id.* at 12. However, as Claimant had no symptoms of back or leg pain prior to the April 27, 2015, work injury, he believed her post-injury symptoms were "at least exacerbated or caused by the work injury." *Id.* Degenerative changes to Claimant's spine were likely present prior to the work injury, but those changes would have been aggravated by an event such as the one Claimant described. *Id.* at 13-14. Dr. Eager further diagnosed Claimant with lumbar radiculopathy and attributed that finding to her work injury. *Id.* at 15.

Dr. Eager testified that, post-surgery, Claimant reported a decrease in both back and leg pain and numbness. *Id.* at 16. Following an examination of Claimant on January 7, 2016, Dr. Eager released Claimant to work sedentary duty, with no lifting and the ability to alternate position as needed. *Id.* at 19. A plan was formulated that would return Claimant to unrestricted duty on February 11, 2016,

with the limitation that Claimant only work a four-hour shift per day for two weeks. *Id.* Claimant would return to regular duty with no qualifications on February 26, 2016. *Id.* It was Dr. Eager's understanding that Claimant returned to work on February 7, 2016. *Id.* at 35. Dr. Eager opined that, within a reasonable degree of medical certainty, the surgery he performed was causally related to the work injury. *Id.* at 20.

On cross-examination, Dr. Eager admitted he was unaware that Claimant suffered a lumbar strain in the early 1990s, and that Claimant was treated for low back pain in October 2011. *Id.* at 21-22. However, Dr. Eager understood that Claimant was able to work and perform her regular job duties prior to April 27, 2015. *Id.* at 27. Following the April 27, 2015 work injury, Claimant suffered pain in her back and legs. *Id.* Dr. Eager's review of medical records related to Claimant's October 2011 back pain did not change his diagnosis, or the cause of that diagnosis. *Id.* at 34.

## B. Employer's Evidence

Employer presented the deposition testimony of Amir H. Fayyazi, M.D., who is board-certified in orthopedic surgery. N.T., 8/8/16, at 5. Dr. Fayyazi performed an IME of Claimant on January 28, 2016. *Id.* at 8. As part of the IME, Dr. Fayyazi took a medical history from Claimant, reviewed relevant medical records and test results, and performed a physical examination. *Id.* at 8, 12, 14-19. He noted that Claimant reported no symptoms of back injury before her work incident, although she acknowledged a lumbar sprain in the early 1990s. *Id.* at 10. Claimant did not report any treatment in 2011 for low back pain. *Id.* at 18.

Dr. Fayyazi testified that during the examination, Claimant did not appear to be in distress, she was able to stand without issue, and her gait and balance appeared normal. *Id.* at 12. She could stand on her toes and heels, and could perform a single

6

leg stand. *Id.* An examination of her neck and upper back was normal. *Id.* Claimant exhibited mild decreasing range of motion in her lumbar spine. *Id.* Otherwise, the tests performed were negative and the examination was unremarkable. *Id.* at 12-14, 21. Dr. Fayyazi testified Claimant's reported high level of pain was inconsistent with the relatively benign findings of his examination. *Id.* at 21.

Based on his review of Claimant's medical records, and considering her medical history and the results of the IME, Dr. Fayyazi determined that Claimant suffered from multi-level degenerative changes in the lumbar spine at the L3-4, L4-5 and L5-S1 levels. *Id.* at 20. Dr. Fayyazi saw no evidence of a disc herniation in the May 2015 MRI scans. *Id.* at 27. Claimant's spinal fusion surgery was reasonable; however, Dr. Fayyazi did not relate the necessity of Claimant's surgery to the accepted work injury of a lumbar strain. *Id.* at 31. While Claimant had not yet fully recovered from the spinal fusion surgery, Dr. Fayyazi opined, within a reasonable degree of medical certainty, that Claimant had fully recovered from her work injury and she was capable of returning to work at light duty.[6] *Id.* at 21, 30, 52-53. His opinion was based in part on his belief that a lumbar strain is a "self-limiting condition" that generally resolves within six weeks. *Id.* at 33. On cross-examination, Dr. Fayyazi acknowledged that Claimant's work injury could have caused an aggravation of her underlying degenerative condition. *Id.* at 45-46.

### C. The WCJ's Decision

In a decision issued on February 23, 2017, the WCJ found that the substantial, competent and credible evidence of record showed that Claimant suffered a work injury on April 27, 2015, which included a lumbar strain and an aggravation of preexisting degenerative disease in Claimant's lumbar spine, and she had not fully

---

[6] Dr. Fayyazi acknowledged that Claimant would not have fully recovered from her spinal fusion surgery as of the date of the IME, January 28, 2016.

7

recovered from that injury. C.R., Item No. 11, WCJ Decision, Finding of Fact (F.F.) No. 84. The WCJ resolved any conflicting evidence in favor of Claimant.

The WCJ found Claimant credible in the explanation of her symptoms and disability following the April 27, 2015 work injury. F.F. No. 79. In crediting Claimant's testimony, the WCJ took into account Claimant's affect and demeanor at the hearing and the corroboration of her symptoms by Dr. Eager and her medical records. F.F. No. 80. The WCJ was also persuaded by Claimant's compliance with recommended treatment and her efforts to continue working post-injury. *Id.*

The WCJ also deemed credible Dr. Eager's opinion that Claimant's April 27, 2015 work injury aggravated a preexisting degenerative disease in her lumbar spine. F.F. No. 81. The WCJ further credited Dr. Eager's opinion that Claimant had not fully recovered from her work injury, although she was at times able to return to work, with and without restrictions. *Id.* The WCJ was persuaded by Dr. Eager's status as Claimant's treating surgeon, the consistency of his testimony, particularly during cross-examination, and Dr. Fayyazi's agreement that the mechanism of injury described by Claimant could result in an aggravation of preexisting degenerative disease in the lumbar spine. F.F. No. 82.

The WCJ discredited Dr. Fayyazi's testimony about the causation, nature, and extent of Claimant's injury-related disability as Dr. Fayyazi only examined Claimant on one occasion, his opinions were inconsistent with Claimant's test results,[7] and he conceded the fact that the mechanism of injury could have aggravated Claimant's preexisting degenerative condition in her lower back. F.F. No. 83. The WCJ also noted Dr. Fayyazi's apparent rejection of Claimant's credible explanation that she did not suffer from disabling low back and leg symptoms before her work injury,

---

[7] The WCJ does not elaborate on the nature of the inconsistency. However, Dr. Fayyazi disagreed with Dr. Eager and the results of Claimant's MRI study, which indicated Claimant suffered a disc herniation in her lumbar spine. N.T., 8/8/16, at 20.

but rather was working full duty without restrictions. *Id.* The WCJ rejected Dr. Fayyazi's opinions where they conflicted with those of Dr. Eager. *Id.*

The WCJ granted Claimant's claim petition, and denied and dismissed Employer's termination petition. WCJ Decision at 14. Finding no violation of the Act or Department rules and regulations on the part of Employer, the WCJ also dismissed Claimant's penalty petition. *Id.*, Conclusion of Law No. 8. Claimant was awarded wage loss benefits beginning August 18, 2015, with Employer entitled to a modification or suspension of wage loss benefits for Claimant's weekly earnings after August 18, 2015. WCJ Decision at 14. Employer was also responsible for any reasonable and necessary medical expenses causally related to Claimant's work injury. *Id.*

Employer appealed to the Board, which affirmed the WCJ. This appeal followed.[8]

**Issue**

Employer argues that the WCJ erred in awarding Claimant benefits after February 26, 2016, the date upon which she was released to work without restrictions or qualifications. Employer suggests Claimant's release to work without restrictions is tantamount to a full recovery from her work injury, and the WCJ's award of "ongoing disability benefits" was contrary to law. Employer's Br. at 9. As Claimant's disability had ceased, she was no longer entitled to benefits under the Act. Consequently, Employer argues, the WCJ should have terminated Claimant's benefits as of February 26, 2016. Employer interprets the WCJ's order as ordering benefits indefinitely, and requiring the payment of lost wages should Claimant miss

---

[8] Our review of the Board's Order is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

9

work for any reason, including vacations and trips to the veterinarian with her cat. *Id*. at 12.

## Discussion

First, we must address Employer's contention that the WCJ's order acts to grant Claimant benefits on an indefinite basis. Simply put, Employer has misapprehended the impact of the WCJ's order. Contrary to Employer's assertions, the WCJ's grant of wage loss benefits was subject to termination or modification based on Claimant's future receipt of weekly wages. Specifically, Employer was "responsible for the payment of wage loss benefits beginning August 18, 2015 and continuing thereafter, *taking into account, however, any weekly earnings of []* *Claimant after [August 18, 2015] which would result in a suspension or modification* *of [] Claimant's wage loss benefits . . . .* " WCJ Decision, Conclusion of Law No. 9 (emphasis added). In other words, Claimant's wage loss benefits were subject to suspension or modification once Claimant resumed working and no longer suffered wage loss due to her work injury. The WCJ's decision is devoid of any language that suggests Claimant would receive benefits for wage loss unrelated to her work injury.

Dr. Eager testified that he understood Claimant had returned to work by February 7, 2016. N.T., 3/1/16., at 35. The WCJ referenced this testimony in his decision, noting that "by the date of [Dr. Eager's] deposition, [] Claimant was actually working without restrictions." F.F. No. 50. The exact date of Claimant's return to full duty is not contained in the record. It is clear, however, that the WCJ recognized Claimant returned to work in stages, and his decision anticipated the modification and suspension of wage loss benefits "based on [Claimant's] post-injury weekly earnings." WCJ Decision at 14. Consequently, we find no merit in Employer's argument that the WCJ's order grants benefits beyond that required to

10

compensate Claimant for wage loss related to her work injury. Rather, we interpret the WCJ's decision as granting wage loss benefits to Claimant for the period beginning August 18, 2015, modifying those wage loss benefits for any period when she had returned to work but was not earning her pre-injury wages, and suspending those same benefits as of the date Claimant returned to work without a loss of earnings.

Next, we address Employer's argument that the WCJ erred in finding Claimant had not fully recovered from her work injury after Dr. Eager released her to work without restrictions as of February 26, 2016. Employer argues Claimant failed to present evidence of an ongoing disability and the WCJ should have terminated her benefits effective February 26, 2016.

Employer appears to conflate the diagnosis of full recovery from a work injury with a physician's release to return to work without restrictions. While Claimant was capable of returning to work, the WCJ found she had not recovered from the effects of her work injury. F.F. No. 84. Employer's own witness, Dr. Fayyazi, agreed Claimant was not recovered from her spinal fusion surgery, although he disagreed the surgery was causally related to her work injury. N.T., 8/8/16, at 53. As Claimant had not fully recovered from her work injury, the WCJ directed the payment of medical expenses related to that injury. WCJ Decision at 14. As discussed herein, the WCJ's grant of wage loss benefits was subject to suspension should Claimant return to work. *Id.* We can discern no error in the WCJ's order directing Employer to continue covering medical expenses related to Claimant's work injury. Clearly, Claimant's ability to resume work with no further loss of wages does not foreclose the possibility of further medical treatment related to a work injury from which she has not recovered.

11

At the heart of Employer's arguments is a desire for a different outcome. To succeed in its termination petition, Employer had the burden of establishing that Claimant's work injury had ceased or that any existing injury was not the result of her work-related injury. *O'Neill v. Workers' Comp. Appeal Bd. (News Corp. Ltd.)*, 29 A.3d 50, 53 (Pa. Cmwlth. 2011). Employer could satisfy that burden by presenting unequivocal and competent medical evidence that Claimant had fully recovered from her work injury. *Id.*

The WCJ found Dr. Fayyazi's medical opinion to be unequivocal and rendered to a reasonable degree of medical certainty. WCJ Decision, Conclusion of Law No. 6. However, the WCJ found Dr. Eager more credible than Dr. Fayyazi, and he rejected the opinions of Dr. Fayyazi to the extent they conflicted with those of Dr. Eager. *Id.* Based on this credibility determination, the WCJ concluded Claimant had not recovered from her work injury. F.F. No. 84. The WCJ, as fact finder, has exclusive province over questions of credibility and evidentiary weight, and the WCJ's findings will not be disturbed if supported by substantial competent evidence. *Westinghouse Elec. Corp. v. Workers' Comp. Appeal Bd. (Weaver)*, 823 A.2d 209, 215 (Pa. Cmwlth. 2003). It is not this Court's function to reweigh the evidence and to determine whether the WCJ made the most reasonable and probable findings that could have been rendered. *Id.* We cannot in our appellate function reweigh the evidence or overturn the WCJ's reasoned credibility determinations.

Employer has not attacked the findings of the WCJ as unsupported by substantial evidence, or argued that his opinion was insufficiently reasoned. Rather, Employer has misconstrued the impact of the WCJ's decision, and suggested that an ability to work without restrictions mandates a finding of full recovery and termination of benefits. As Employer failed to meet its burden of demonstrating Claimant had fully recovered from her April 27, 2015 work injury, we conclude the

12

WCJ did not err in granting Claimant benefits for medical expenses and wage loss, with wage loss benefits suspended upon Claimant's return to work. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heartland Employment Services, : 
LLC, : 
                Petitioner : 
             : 
        v. : No. 544 C.D. 2018
             : 
Workers' Compensation Appeal : 
Board (Ebner), : 
                Respondent : 

## **O R D E R**

AND NOW, this 25th day of February, 2019, the Order of the Workers' Compensation Appeal Board, dated March 20, 2018, is hereby AFFIRMED.

 

                                     ELLEN CEISLER, Judge