IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Havens, : 
               Petitioner : 
                : 
        v. : No. 1415 C.D. 2016
            : No. 373 C.D. 2017
Workers' Compensation Appeal : Submitted: September 22, 2017
Board (CNA Financial Corporation), : 
          Respondent : 
              : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: February 14, 2018

      William A. Havens (Claimant) petitions for review of two adjudications[1] of the Workers' Compensation Appeal Board (Board) denying his penalty petitions and terminating his benefits under the Workers' Compensation Act (Act).[2] In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant had fully recovered from his work-related injury and that CNA Financial Corporation (Employer) had paid the medical compensation benefits owed to Claimant. In his appeal, Claimant argues that the WCJ's critical findings of fact are not supported by competent evidence and, thus, the Board erred. We affirm.

## Background

---

[1] This Court consolidated Claimant's two petitions for review.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

Claimant worked for Employer as an inspector of commercial properties in the mid-Atlantic region that had submitted claims under their insurance policies. On one such trip, in October 1999, Claimant sustained a work-related injury when the bed in his hotel room collapsed, and he landed on his spine on a carpeted concrete floor. Claimant's work injury was adjudicated as "significant aggravation and acceleration of his pre-existing degenerative disc disease[,]" and "a disc herniation at L4-5 … causing nerve impingement at L5 and a right-sided L5 radiculopathy." WCJ Decision, 12/16/2003, at 7, Finding of Fact No. 11; Penalty Petition Reproduced Record at 10a (P.P.R.R. __).

### Claimant's Penalty Petitions

In August 2013, Claimant saw James Schuster, M.D., a board-certified surgeon, for symptoms of pain in his left back and leg. Following a magnetic resonance imaging (MRI) test, Dr. Schuster recommended a discectomy, which was done on October 15, 2013. After the surgery, Claimant continued to experience pain in his left leg and in his lower back. Notes of Testimony (N.T.), 6/10/2015, at 20; P.P.R.R. 134a. In January 2014, Dr. Schuster referred Claimant to Alexander Chen, M.D., a pain management specialist, for treatment.

In June 2014, Claimant's counsel sent correspondence to Employer about its nonpayment of a provider bill related to Claimant's October 2013 surgery, as well as other bills related to diagnosis and treatment of his disc herniation. On November 10, 2014, Claimant filed a penalty petition alleging that Employer had violated the Act by not paying the above-described medical invoices. On November 12, 2014, Claimant filed a second penalty petition alleging Employer's failure to pay reasonable and necessary medical expenses contravened Claimant's adjudicated work injuries. Employer denied Claimant's allegations.

2

At the hearing on the penalty petitions, Claimant submitted various medical records, invoices, and his deposition testimony. In addition, Claimant submitted the WCJ's decision of December 15, 2003, denying Employer's termination petition. WCJ Decision, 10/21/2015, at 4.

In response, Employer submitted the February 17, 2015, report of Leonard Bruno, M.D., who is board certified in neurological surgery. Dr. Bruno conducted an independent medical evaluation (IME) and neurosurgical evaluation of Claimant. In his IME report, Dr. Bruno stated:

> [I]t is my opinion within a reasonable degree of medical certainty that *[Claimant's] condition at this time is postlaminectomy syndrome related to his L5-S1 foraminotomy performed October 15, 2013, none of which is related to this work injury* whatsoever. The lumbar surgery October 15, 2013, was in no way related to his October 15, 1999, work injury, which had resulted in ongoing problems with low back and right leg pain for which [Claimant] was treated, reached maximum medical improvement by August or September 2000, and had functional capacity evaluation November 15, 2000, indicating that he was capable of part-time light duty work.
>
> It is my opinion within a reasonable degree of medical certainty that the *patient is fully recovered from any injuries that he may have sustained October 15, 1999, and that these injuries have not contributed to his L5-S1 disc level abnormalities* nor have they brought about the need for surgery in that area. [Claimant's] degenerative lumbar disc disease and condition is related to normal aging, superimposed on his condition of rheumatoid arthritis, diabetes, and general deconditioning and none of the MRI scans have ever shown any evidence of disc herniation at that level, but show only degenerative changes, which in fact on the MRI scans, showed no significant progression over a period of 14 years.
>
> ***

It is my opinion that [Claimant's] ongoing medical treatment at this time has no relationship whatsoever to his work injury of October 15, 1999; it is only related to his degenerative lumbar disc disease at the L5-S1 level, which was on the basis of injury prior to his work injury of 1999, was accelerated by his spina bifida occulta and lamina defect at that level, and his diabetes and rheumatoid arthritis.

Bruno IME Report, 2/17/2015, at 5-6 (emphasis added); P.P.R.R. 210a-11a.

On October 21, 2015, the WCJ denied Claimant's penalty petitions. The WCJ did not find Claimant's testimony credible or persuasive, explaining as follows:

Claimant's testimony is not credible that the surgery he had in 2013 was in any way related to his work injury of 1999. Of significance is the fact that he did not see any medical professionals specifically for his back and leg pain during the over ten year period of time between his original work injury and his surgery in 2013. Claimant did indicate that he told various providers that he had back pain but this Judge does not find him credible on that issue because those providers were rendering treatment for his arthritis, diabetes or Claimant's multiple other ailments. In addition, no physician presented by Claimant has said that this surgery is related. Thus, Claimant's testimony is not accepted as fact.

WCJ Decision, 10/21/2015, at 7; Finding of Fact No. 25.

The WCJ found Dr. Bruno credible and persuasive. The WCJ explained:

Dr. Bruno has reviewed multiple records and concluded that Claimant's surgery in 2013 was not related to his original work injury. This is consistent with the diagnostic studies specifically the MRI report of January 21, 2013 which indicated the same changes as the MRI report of 1999 without any substantial difference over the period of fourteen years. The September 3, 2013 MRI was unchanged from the January 2013 MRI. The

4

EMG of September 18, 2000 showed chronic changes in the lumbar nerve root consistent with peripheral neuropathy and right L5 nerve root irritation and significant peripheral neuropathy related to Claimant's diabetes. Also of significance were the details of Dr. Bruno's examination wherein Claimant voluntarily limited his straight leg raising. Claimant's reports of tenderness were not correlated by findings of spasms and his sensory changes were consistent with peripheral neuropathy not a nerve root irritation. The MRI scan of March 25, 2014 shows left sided enhancing granulation tissues surrounding the left facet and extending along the left neural foraminal and left far lateral region contribution to moderate neural foraminal narrowing at the L5-S1 level. The scar tissue in this region is a result of Claimant's surgery of October 15, 2013, which was unrelated to his work injury. These conditions and the pain produced by these conditions are unrelated to Claimant's original work injury. The report of Dr. Bruno is accepted as fact.

*Id.* at 8; Finding of Fact No. 26. Claimant appealed to the Board.

On August 2, 2016, the Board affirmed the WCJ's decision. The Board rejected Claimant's contention that the connection between his 1999 injury and his 2013 surgery was obvious and, thus, he did not need to present an expert medical opinion on causation. In any case, the WCJ, as factfinder, accepted Dr. Bruno's testimony that there was no causal connection between the 1999 work injury and the 2013 surgery and post-surgery treatment. Rather, Dr. Bruno diagnosed Claimant's current complaints as postlaminectomy syndrome related to the October 2013 surgery.

### Employer's Termination Petition

On March 11, 2015, Employer filed a termination petition alleging that Claimant was able to return to work without limitation and had fully recovered from his 1999 work injury as of January 13, 2015, the day of Dr. Bruno's IME. Claimant

5

filed an answer denying the allegations, and the WCJ conducted an evidentiary hearing.

Employer submitted the deposition testimony of its expert witness, Dr. Bruno, who opined that Claimant "had reached maximum medical improvement for the accepted injuries from October, 1999."  N.T., 7/22/2015, at 35; Termination Petition Reproduced Record at 35a (T.P.R.R. __).  Dr. Bruno explained that at the time of his IME, Claimant had no complaints of right leg pain or weakness.  Further, when he examined Claimant's right lower extremity, it was neurologically normal except for peripheral neuropathy related to diabetes.

Additionally, as noted, Dr. Bruno testified that Claimant's October 2013 surgery was not related to his work injury.  Dr. Bruno explained:

> *[Claimant's] surgery in October, 2013 was at the L5-S1 level, which was not the level that Dr. Freese and Dr. DeMasi were evaluating and concentrating on in 1999*.  The changes that [Claimant] had on his MRI scan in 1999 at the L5-S1 level were the result of age appropriate degenerative change, his congenital spina bifida occulta, and his diabetes.  The MRI scan of 2013 performed January 21st, 2013 and September 3rd, 2013 did not show major progression of changes at the L5-S1 level from the prior scan of October, 1999, obviating the conclusion that anything that occurred in 1999 contributed to advancing degenerative change.  *And the findings at the surgery in October, 2013 were of foraminal compromise, not disc herniation, again not the result of trauma.*
>
> So, it is my opinion, within reasonable medical certainty, that surgery for which [Claimant] was treated, or with which [Claimant] was treated, in October of 2013, was done for a condition which was not related to his work injury of October, 1999.

N.T., 7/22/2015, at 34-35; T.P.R.R. 34a-35a (emphasis added).

6

Claimant presented no evidence. Instead, when asked how he would respond to Employer's termination petition, Claimant stated that he would "simply brief that[,]" and intended "to introduce no other testimony on that." N.T., 10/5/2015, at 9. In submitting his proposed findings of fact and conclusions of law to the WCJ, Claimant "quoted extensively from litigation from 2001 and 2003." WCJ Decision, 2/24/2016, at 3; Finding of Fact No. 5.

By decision of February 24, 2016, the WCJ granted Employer's termination petition. The WCJ noted that the only evidence presented was the deposition testimony of Dr. Bruno, which the WCJ found to be credible and persuasive. The WCJ explained as follows:

> Dr. Bruno's testimony is credible because he performed a thorough examination of [Claimant] and also reviewed voluminous medical records, as well as deposition transcripts from prior litigation including those of Dr. Freese who was Claimant's primary treating physician and Claimant's own deposition testimony from prior litigation. Dr. Bruno also reviewed more recent treatment records such as Dr. Schuster's [p]re-operative and post-operative reports as well as the operative report itself from October 16, 2013. In addition, Dr. Bruno reviewed records from Dr. Chen, a pain management doctor who followed [Claimant] post operatively. Most significantly, Dr. Bruno [reviewed] serial MRI studies from 1999 through 2014 and these studies demonstrated that Claimant suffered from non-work related spina bifida occulta at L5-S1 level. The earliest MRI report of November 9, 1999 showed severe degenerative changes at L4-5 without evidence of a disc herniation and also revealed that the existing L5 nerve roots were not compressed, although there was some narrowing due to facet disease or bone spur formation. This report indicated that there were degenerative changes at L5-S1 as well.

*Id.* at 6; Finding of Fact No. 16. Further, the WCJ observed that neither Dr. Schuster nor Dr. Chen testified, and "[t]here are no reports from these physicians concluding

7

that [Claimant's] need for surgery on October 16, 2013 was as a result of work related symptomatology or work related acceleration and herniation at L4-5 or L5-S1." *Id.* at 7; Finding of Fact No. 20. Claimant appealed to the Board.

The Board affirmed the WCJ. The Board concluded that Dr. Bruno testified unequivocally that as of January 13, 2015, Claimant had reached his maximum medical improvement from his 1999 work injury, could return to his pre-injury job, and that Claimant's current medical problems were unrelated to his work injury. Board Adjudication, 3/27/2017, at 8. The Board held that Dr. Bruno's testimony satisfied Employer's evidentiary burden on its termination petition.

The Board rejected Claimant's argument that Dr. Bruno's testimony was incompetent because "he attacked the work injury, the cause of the work injury, the diagnosis of the work injury, and the need for future treatment … in conflict with [the WCJ's] December 15, 2003 Decision." *Id.* at 6. The Board explained that Dr. Bruno based his opinions on the injury described in the WCJ's December 15, 2003, decision by assuming "that the work injury consisted of a disc herniation at L4-5 causing nerve impingement at L5 and right-sided L5 radiculopathy as well as an L5-S1 abnormality and a significant aggravation and acceleration of his pre-existing degenerative disc disease." *Id.* Accordingly, the WCJ did not err in relying on his testimony.

**Petition for Review**

On appeal,[3] Claimant argues that the Board erred in affirming the WCJ's decisions granting Employer's termination petition and denying his penalty

---

[3] This Court's review determines whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, or whether constitutional rights

8

petitions because those decisions were not based on competent and substantial evidence. We begin with the penalty petitions.

## Penalty Petitions

Claimant argues that the WCJ erred in denying his penalty petitions. Specifically, Claimant argues that Dr. Bruno's testimony was incompetent because it conflicted with the WCJ's 2003 decision on the scope of Claimant's work injury.

In a penalty petition proceeding, the claimant bears the burden of proving a violation of the Act occurred. *Cozzone v. Workers' Compensation Appeal Board (PA Municipal/East Goshen Township)*, 73 A.3d 526, 542 (Pa. 2013). If the claimant proves a violation, then the burden shifts to the employer to prove it did not violate the Act. *Gumm v. Workers' Compensation Appeal Board (Steel)*, 942 A.2d 222, 232 (Pa. Cmwlth. 2008).

This Court has explained that "[c]ompetency, when applied to medical evidence, is merely a question of whether a witness's opinion is sufficiently definite

---

were violated or an error of law was committed. *CVA, Inc. v. Workers' Compensation Appeal Board (Riley)*, 29 A.3d 1224, 1227 n.4 (Pa. Cmwlth. 2011).

This Court will not disturb a WCJ's findings of fact where supported by substantial evidence, which is "such relevant evidence which a reasonable mind might accept as adequate to support" a finding or conclusion. *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990). In reviewing a WCJ's factual findings, this Court determines whether they "have the requisite measure of support in the record" as a whole. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Additionally, "[the Court] must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence." *A & J Builders, Inc. v. Workers' Compensation Appeal Board (Verdi),* 78 A.3d 1233, 1239 (Pa. Cmwlth. 2013). Finally, "it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Lahr Mechanical v. Workers' Compensation Appeal Board (Floyd)*, 933 A.2d 1095, 1101 (Pa. Cmwlth. 2007).

9

and unequivocal to render it admissible." *Pryor v. Workers' Compensation Appeal Board (Colin Service Systems)*, 923 A.2d 1197, 1203 (Pa. Cmwlth. 2006). We have stated that, "a medical expert's opinion is not rendered incompetent unless it is based solely on inaccurate information." *Id.*

Here, Claimant's disability was adjudicated in 2003 to be a "sustained significant aggravation and acceleration of his pre-existing degenerative disc disease[,]" and "a disc herniation at L4-5 … causing nerve impingement at L5 and a right-sided L5 radiculopathy." WCJ Decision, 12/16/2003, at 7, Finding of Fact No. 11; P.P.R.R. 10a. Notably, this nerve impingement and radiculopathy did not cause Claimant pain:

> Dr. Freese's findings are supported by diagnostic studies, which indicated that Claimant sustained a disc herniation at L4-5 on October 15, 1999, causing nerve impingement at L5 and a right-sided L5 radiculopathy. Dr. Freese noted that before the injury Claimant did not have radiculopathy or discogenic pain.

*Id.* In finding no relation between Claimant's disc herniation in 1999 and his surgery in 2013, Dr. Bruno acknowledged Claimant's work injury as "low back and right leg pain for which the patient was treated." Bruno IME Report, at 5-6; P.P.R.R. 210a-11a. He then opined that this work injury neither contributed to Claimant's L5-S1 disc level abnormalities nor produced the need for surgery. *Id.* Dr. Bruno's understanding of Claimant's injury was fully consistent with the injury that was described in the WCJ's 2003 decision.

Additionally, in rendering his opinion, Dr. Bruno reviewed numerous medical records, including: (1) Dr. Schuster's operative report dated October 15, 2013; (2) Dr. Schuster's records from August 28, 2013, through November 13, 2013; (3) Mercy Medical Associates' medical records from October 2009 through June

2014; and (4) the reports of MRI scans conducted on November 9, 1999; January 21, 2013; and March 25, 2014. Dr. Bruno also reviewed Claimant's deposition testimony, as well as the testimony of Dr. Andrew Freese, Dr. Menachem Miller, Dr. Richard Dillon, and Dr. Leon DeMasi, all of whom treated Claimant. Dr. Bruno did a physical examination of Claimant, at which he took Claimant's history.

In short, Dr. Bruno understood the nature of Claimant's injuries as adjudicated by the WCJ in 2003, and he reviewed all of the pertinent medical records before opining that Claimant had fully recovered from his work injury. We reject Claimant's argument that Dr. Bruno was not a competent witness.

Claimant challenges the WCJ's findings of fact by asserting that the WCJ did not consider all the record evidence. The WCJ found as follows:

> Claimant's testimony is not credible that the surgery he had in 2013 was in any way related to his work injury of 1999. Of significance is the fact that he did not see any medical professionals specifically for his back and leg pain during the over ten year period of time between his original work injury and his surgery in 2013. Claimant did indicate that he told various providers that he had back pain but this Judge does not find him credible on that issue because those providers were rendering treatment for his arthritis, diabetes or Claimant's multiple other ailments. *In addition, no physician presented by Claimant has said that this surgery is related. Thus, Claimant's testimony is not accepted as fact*.

WCJ Decision, 10/21/2015, at 7; Finding of Fact No. 25 (emphasis added). The remainder of Claimant's evidence consisted of correspondence, subrogation documents and medical records, including medical bills. The WCJ did not disregard any of Claimant's evidence. She expressly considered it.

Claimant's real problem is that the WCJ did not accept his evidence. However, "the fact that one party to a proceeding may view testimony differently is

11

not grounds for reversal" where, as here, substantial evidence supports the findings of fact. *Second Breath v. Workers' Compensation Appeal Board (Gurski)*, 799 A.2d 892, 899 (Pa. Cmwlth. 2002). Viewing the record in the light most favorable to Employer, we conclude that the record contains substantial evidence to support the WCJ's findings. Accordingly, the Board did not err by affirming the WCJ's denial of Claimant's penalty petitions.

### Termination Petition

Claimant next challenges the WCJ's decision to grant Employer's termination petition. Claimant contends Dr. Bruno's testimony was not competent because it was contrary to the WCJ's 2003 decision and ignored Claimant's history of radiculopathy. Further, Employer did not establish any improvement in his physical condition.

Section 413 of the Act provides that a claimant's benefits may be terminated based upon a change in his disability:

> A [WCJ] designated by the department may, at any time, modify, reinstate, suspend, or *terminate* a notice of compensation payable, an original or supplemental agreement or an award of the department or its [WCJ], upon petition filed by either party with the department, *upon proof that the disability of an injured employee has* increased, decreased, recurred, or has temporarily or *finally ceased*.... Such … termination shall be made as of the date upon which it is shown that the disability of the injured employe has … finally ceased….

77 P.S. §772 (emphasis added). In a termination proceeding, the employer bears the burden of proving that the work injury has ceased. *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). That burden is satisfied where a medical expert opines, within a reasonable degree of medical certainty, that the claimant is fully recovered, may return to work without

12

restrictions, and that there is no objective medical evidence to substantiate the claimant's reported pain or connect it to the work injury. *Id.* An employer may not use a termination petition to relitigate an established work-related injury. *O'Neill v. Workers' Compensation Appeal Board (News Corporation, Ltd.)*, 29 A.3d 50, 55 (Pa. Cmwlth. 2011).

In support of Employer's termination petition, Dr. Bruno opined that Claimant's current medical issues were not related to his work injury but to the 2013 surgery, which was also not work-related. In 2003, Claimant's disability was adjudicated to be an aggravation "of his pre-existing degenerative disc disease[,]" and "a disc herniation at L4-5 … causing nerve impingement at L5 and a right-sided L5 radiculopathy." WCJ Decision, 12/16/2003, at 7, Finding of Fact No. 11; P.P.R.R. at 10a. Dr. Bruno expressly acknowledged the accepted 1999 work injury as "a disc herniation at L4-5 … causing nerve impingement at L5[] and the right sided L5 radiculopathy" disease.[4] N.T., 7/22/2015, at 33; T.P.R.R. 33a. Claimant's

---

[4] At the deposition, Dr. Bruno was asked:

[Attorney:]   And I want you to assume for the purposes of this deposition that Judge Makin has adjudicated [Claimant's] work injury, and that the accepted work injury is as follows. Okay? And this is based upon Dr. Freese's findings, which are supported by diagnostic studies, which indicate that [Claimant] sustained a disc herniation at L4-5 on October 15th, 1999, causing nerve impingement at L5, and the right sided L5 radiculopathy.

Dr. Freese testified that the 1999 MRI scan at the time of the lumbar spine, showed abnormal predominantly at L4-5. But that the 2000 scan had evidence of L5-S1 abnormality. And that this was not a natural progression of [C]laimant[']s degenerative disc disease, but due to his work injury. And that the October 15th, 1999 work injury caused a significant aggravation and acceleration of his preexisting degenerative disc disease from which he has not recovered.

* * *

13

assertion that Dr. Bruno did not accept his work injury in 2003 is belied by the record.

Next, Claimant contends that Employer did not establish a change in his physical condition, which is necessary to support a termination of benefits. In *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007), the Pennsylvania Supreme Court stated:

> In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. Only then can the [WCJ] determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. Further, by natural extension it is necessary that, where there have been prior petitions to ... terminate benefits, the employer must

---

Do you have an opinion, taking that injury description into account, whether or no [Claimant] – first of all, whether [Claimant's] October, 2013 surgery was related to that injury description?

[Dr. Bruno:] It's my opinion that [Claimant's] October, 2013 surgery was not related to his work injury of October, 1999.

\* \* \*

[Attorney:] Do you have an opinion, … taking into account the accepted work related injury, whether or not at the time of your evaluation, [Claimant] had recovered from same?

[Dr. Bruno:] It is my opinion [Claimant] had reached maximum medical improvement for the accepted injuries from October, 1999….

\* \* \*

[Attorney:] And again, taking into account the history, the exam, the records you reviewed, do you have an opinion as to whether or not [Claimant] needs any further medical treatment from his accepted work related injuries?

[Dr. Bruno:] It's my opinion that he does not require additional treatment for the work injury.

N.T., 7/22/2015, at 33-37; T.P.R.R. 33a-37a.

14

demonstrate a change in physical condition since the last disability determination.

*Id.* at 926. A "change of condition" is defined as "any change in the claimant's physical well being that affects his ability to work." *Id.* "It can be the total recovery from an illness or merely that the symptoms subside." *Id.* An employer's case must "begin with the adjudicated facts found by the WCJ in the first termination petition and work forward in time to show the required change." *Folmer v. Workers' Compensation Appeal Board (Swift Transportation)*, 958 A.2d 1137, 1143-44 (Pa. Cmwlth. 2008).

In the 2003 termination proceeding, the WCJ found that Claimant had not recovered from his work injury. In the second termination proceeding, the WCJ found that Claimant was fully recovered from his work injury and his current complaints were not related to that work injury. This evidence established a change in physical condition. *See Folmer,* 958 A.2d at 1145.

In arguing otherwise, Claimant points to the WCJ's 2003 decision, which recited Claimant's testimony that he experienced pain down both legs. However, the WCJ found the injury to be "a right-sided L5 radiculopathy." WCJ Decision, 12/16/03, at 7, Finding of Fact No. 11; Termination Petition Certified Record Item No. 15 at 5. Stated otherwise, the WCJ's 2003 decision did not find that Claimant's testimony established a left-sided radiculopathy.

Claimant also contends that Dr. Bruno "offered a false diagnosis" of the cause of his current symptoms of low back pain and radiculopathy. However, Dr. Bruno's diagnosis of Claimant's current symptoms is supported by Claimant's medical records.

15

Claimant's MRI report from November 1999 showed severe degenerative changes at the L4-5 level but no evidence of disc herniation. Claimant's MRI report from January 2013 revealed

> degenerative changes in the lumbar spine without any substantial difference from the prior scan fourteen years before. There was disc bulging present, slightly asymmetrical foraminal narrowing at the L5-S1 level on the left side. *There was no specific disc herniation.* No other foraminal stenosis. And the L4-5 level was noted to be degenerative with patent neural foramen bilaterally, meaning open foramen on both sides.

N.T., 7/22/2015, at 23-24; T.P.R.R. 23a-24a (emphasis added). Claimant's MRI report from September 2013 stated that the "report was unchanged from the previous January, 2013 study[.]" N.T., 7/22/2015, at 24; T.P.R.R. 24a. The notes from Claimant's surgery "in October, 2013 were of foraminal compromise, not disc herniation." N.T., 7/22/2015, at 34; T.P.R.R. 34a. Finally, Dr. Bruno reviewed the report of Claimant's March 2014 MRI scan, taken five months after his surgery, and observed an

> epidural scar formation, or enhancing granulation tissue surrounding the left L5-S1 facet joint, extending along the left neural foramen, and far left lateral region of the spinal canal, contributing to moderate neural foraminal narrowing at the L5-S1 level.

N.T., 7/22/2015, at 31; T.P.R.R. 31a. In sum, Dr. Bruno found that scar tissue from the surgery caused nerve root compression and accounted for Claimant's symptoms of left leg pain.

Claimant argues that his symptoms could not have been caused by his discectomy in October 2013 because after surgery he continued to experience the same pain that he had before surgery. Dr. Bruno also addressed this issue.

16

Dr. Bruno testified that it takes six to twelve weeks for scar tissue to form. Dr. Bruno believed that Claimant's post-surgery pain was due to the surgery. Specifically, Dr. Bruno explained:

> [Dr. Bruno:] Sometimes surgical intervention of this type will bring about damage or injury to tissues, which were not damaged or injured to start with. And it can make these facet joints unstable, bringing about more low back pain, postoperatively. And sometimes there is actually devascularization, a compromise of the nerve route, from the surgical procedure unrelated to scar tissue, that brings about additional systems.
>
> [Attorney:] Can diabetes complicate that further?
>
> [Dr. Bruno:] Yes, diabetes causes compromise of soft tissue recovery, and continued circulation. So, it certainly is more of a complicated factor.

N.T., 7/22/2015, at 56; T.P.R.R. 56a.

The WCJ found Dr. Bruno's testimony credible. The fact that Claimant continued to experience the same pain after surgery does not contradict Dr. Bruno's opinion on the cause of his current pain. Moreover, the diagnostic studies, specifically the 2014 MRI, showed an "epidural scar formation, or enhancing granulation tissue surrounding the left L5-S1 facet joint[.]" N.T., 7/22/2015, at 31; T.P.R.R. 31a. We reject Claimant's argument that Dr. Bruno rendered a "false diagnosis."

Finally, Claimant argues that Dr. Bruno "ignored" the diagnosis and findings of Drs. Schuster and Chen. This argument goes to the weight and credibility of the evidence, not to its competency. "[T]he WCJ, as fact-finder, has complete authority over questions of witness credibility and evidentiary weight." *Verizon*

17

*Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015).  As factfinder, the WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part.  *Id.*

On the termination petition, the only evidence presented was the deposition of Dr. Bruno.  Claimant did not introduce testimony from either Dr. Schuster or Dr. Chen to rebut the testimony of Dr. Bruno.  Moreover, "[t]here [we]re no reports from these physicians concluding that [Claimant's] need for surgery on October 1[5], 2013 was as a result of work related symptomology or work related acceleration and herniation at L4-5 or L5-S1."  WCJ Decision, 2/24/2016, at 7; Finding of Fact No. 20.  Claimant's argument lacks merit.

## Conclusion

For all of these reasons, we affirm the Board's adjudication affirming the WCJ's decisions to deny Claimant's penalty petitions and to grant Employer's termination petition.

_____
MARY HANNAH LEAVITT, President Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Havens,                           :
                    Petitioner            :
                                          :
            v.                            :  No. 1415 C.D. 2016
                                          :  No. 373 C.D. 2017
Workers' Compensation Appeal              :
Board (CNA Financial Corporation),        :
                    Respondent            :
                                          :

# **O R D E R**

AND NOW, this 14th day of February, 2018, the orders of the Workers'
Compensation Appeal Board dated August 2, 2016, and March 27, 2017, in the
above-captioned matter are hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge